Points decided.

[No. 795.]

## GOLDEN FLEECE G. AND S. M. CO. RESPONDENT, v. THE CABLE CONSOLIDATED G. AND S. M. CO. APPELLANT.

ACTION TO DETERMINE THE RIGHT OF POSSESSION OF A MINING CLAIM.—Under section 1674 of the compiled laws, which is designed to supplement section 2326 of the revised statutes of the United States, the pendency of a contest in the land-office, with respect to a mining claim, gives the district courts jurisdiction to determine the right of possession as between the adverse claimants.

IDEM—PROOFS HOW MADE—ACTUAL POSSESSION.—Each party must prove his claim to the premises in dispute, and the better claim must prevail. Actual possession makes out a *prima facie* case for the contestant and throws upon the defendant the burden of proving a superior right in himself.

IDEM—PROOF OF ACTUAL POSSESSION NOT NECESSARY.—Plaintiff may sustain this action without proving actual possession. A right to the possession is all that is necessary.

POSSESSION OF MINING GROUND, HOW PROVED.—Proof of a clearly defined surface claim surveyed and marked by a United States surveyor in accordance with law, including a quartz lode running with the claim, and work on the vein inside of the surface claim and within the lines of the disputed ground, is proof of possession sufficient to put the defendant on proof of its right.

ALIENS CANNOT LOCATE NOR HOLD MINING CLAIMS.—An alien who has never declared his intention to become a citizen, is not a qualified locator of mining ground, and he cannot hold a mining claim either by actual possession or by location against one who connects himself with the government title by compliance with the mining law.

LOCAL MINING DISTRICTS AND RULES.—The mining laws of the United States recognize and sanction the custom of the miners among organized mining districts to adopt local laws or rules governing the location, recording and working of claim not in conflict with state or federal legislation.

IDEM—TITLES TO MINING CLAIMS, HOW ACQUIRED.—It is not essential that mining districts should be organized, and local rules adopted, in order that mining claims may be held and the government titles acquired. A compliance with the mining laws of the United States is sufficient to secure the claim.

RE-LOCATION OF MINING GROUND.—Where the first claimant who takes up the claim is not a citizen, or has forfeited his right by non-compliance with the mining laws, or abandoned his claim, the mining ground staked off by him, is open to location by any citizen of the United States.

MINING RECORDER—PROOF AS TO RECORD OF CLAIM WHEN INADMISSIBLE.—Proof of a record is irrelevant without proof of some regulation making a record obligatory, or giving it some effect. The public law does not of

itself create any such office as mining recorder; nor does it make the recording of claims obligatory, or give to a record any effect.

IDEM—LOCAL RULES.—The record is to be provided for and its effect determined by the local laws or regulations of miners in the respective mining districts, and if they fail to provide for a record then none is required.

IDEM.—If a record is provided for by local rules it must, under the provisions of the mining laws of the United States, contain an accurate description of the *locus* of the claim by reference to natural objects or permanent monuments.

PROOF AND EFFECT OF LOCATION BY ALIENS—QUESTION OF CITIZENSHIP, HOW DETERMINED.—Leonard, one of the five locators of the mining claim of defendant, stated, on cross-examination, that at the date of the location he was not a citizen, and had never declared his intention to become one. The court thereupon decided that the location of the claim was void, and excluded all evidence in regard to it, including the deeds of conveyance from Leonard, and his associates, to defendant; *Held*, that this action of the court was erroneous; that, as Leonard had parted with his interest, his admissions were not binding on his grantees, and that the question of citizenship was one for the jury, not the court, to decide.

IDEM—RIGHTS OF CO-LOCATORS.—There being no evidence tending to show that Leonard's co-locators were aware of his disability, or were colluding with him in his attempted fraud, if he was an alien: *Held*, that in such a case the law would be sufficiently vindicated by holding that the alien's claim is void.

LOCATION OF MINING CLAIMS—WHEN SURFACE LINES CANNOT BE CHANGED.— Under the mining laws of the United States, unaided by any supplementary miners' rules, there is no way of locating a quartz-vein, except by marking out surface lines, and when these lines have been marked, they cannot be changed so as to take in ground that has been located by others prior to such attempted change.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are sufficiently stated in the opinion of the court.

*De Long & Belknap*, for Appellant:

I. The motion for a nonsuit should have been granted. (38 Wis. 320.) Mining claims on the public lands must be held and worked in accordance with the local mining laws in force in the mining district where the same are located. (*Strong* v. *Ryan*, 42 Cal. 34; Revised Laws of U. S. sec. 2324.) There was no sufficient proof of the mining record being made by a proper officer or by any authority; or that

the record was made, or the claim located, in accordance with any mining rules or regulations whatever. The mining laws of the locality govern the location and manner of developing the mines; and where they directly point out how such mining claims must be located, and how the possession, once acquired, is to be maintained, that course must be strictly pursued. (*Mallett* v. *Uncle Sam*, 1 Nev. 188; *Overman S. M. Co.* v. *Amer. M. Co.*, 7 Nev. 318.) Mining regulations and instructions issued by the general land-office: Skidmore, 37, sec. 12. Plaintiff must recover on proof of his own title, and not on the weakness of his adversaries. *Mallett* v. *Uncle Sam*, 1 Nev. 188.)

II. The court erroneously refused defendant the privilege of having a special verdict as required by law. (Nev. Stat., sec. 1238.)

III. The court erred in refusing the instructions asked for by defendant. (U. S. Rev. Laws, sec. 2324; *Overman S. Mining Co.* v. *Amer. S. Mining Co.*, 7 Nev. 318; Broom's Legal Maxims, sec. 353; *English* v. *Johnson*, 17 Cal. 107; *Atwood* v. *Fricott*, 17 Id. 37; *Rogers* v. *Cooney*, 7 Nev. 219; *Hess* v. *Winder*, 30 Cal. 349; *Morton* v. *Solambo C. M. Co.*, 26 Id. 527; *Ayers* v. *Bensley*, 32 Id. 620; *Potter* v. *Knowles*, 5 Id. 87; Skidmore, 37, secs. 13 and 14; Copp's Decisions, 59; U. S. Rev. Stats. sec. 2320.)

IV. The court erred in refusing to allow defendant to prove a delivery of possession by the original locators to Bennett and Free under the contract, and from Bennett and Free to the defendant. This proof was necessary not only to disprove the possession plaintiff claimed, and which it was necessary for it to have to maintain this action; but such possession being prior, continuous and actual, would render their location void as not being of unoccupied unclaimed land. (*Table M. Co.* v. *Stranahan*, 20 Cal. 198; *Jackson* v. *Feather River W. Co.*, 14 Id. 22.)

V. Under a proceeding of this nature the only question referred to the state court to try is the right of possession. (U. S. Rev. Stats. sec. 2326; 1 Nev. Comp. Laws, sec. 1674.)

VI. The state constitution gives aliens who are *bona fide*

residents of the state the same right to possess real estate
as other persons enjoy. (Art. I, sec. 16.)   Plaintiff had no
right to cross-examine Leonard as to his citizenship; he
could only be examined as to facts and circumstances con-
nected with the matters stated in his direct examination.
(*Landsberger* v. *Gorham*, 5 Cal. 450; *Jackson* v. *Feather River
Water Co.*, 14 Id. 19; *Thornburg* v. *Hand*, 7 Id. 561; *Aitken*
v. *Mendenhall*, 25 Id. 213.)   The title of an alien is good as
against the whole world, except the government, and can
only be divested by the government by the exercise of its
prerogative. (*Craig* v. *Leslie*, 3 Wheat. 590; *Fairfax* v. *Hun-
ter*, 7 Cranch. 620; *Governeur's Heirs* v. *Robertson*, 11 Wheat.
356; *Jones* v. *McMasters*, 20 How. 8; *Jinkins* v. *Noel*, 3 Stew.
(Ala.) 60; *People* v. *Folsom*, 5 Cal. 373; *Dudley* v. *Grayson*,
6 Mon. (Ky.) 260; *Buchanan* v. *Deshon*, 1 H. & G. (Md.)
280; *Sheaffe* v. *O'Neil*, 1 Mass. 256; *Jackson* v. *Smith*, 7
Wend. 368; *Munro* v. *Merchant*, 28 N. Y. 9; *Marshall* v.
*Loveless*, Cam. & N. (N. C.) 217; *Doe* v. *Horintblea*, 2 Naiger,
Id. 37; *University* v. *Miller*, 3 Dev. N. C. L. 191; *Groves* v.
*Gordon Mill*, S. C. Const. 111; *Marshall* v. *Conrad*, 5 Call.
(Va.) 364; *Osterman* v. *Baldwin*, 6 Wallace, 121; *Cross* v. *De-
Valle*, 1 Id. 8; *Bradstreet* v. *Supervisors of Oneida Co.*, 13
Wend. 546: *Ford* v. *Harrington*, 16 N. Y. 285; *Overing* v.
*Russell*, 32 Barb. 263–5; *Ramires* v. *Kent*, 2 Cal. 558; *Cali-
fornia* v. *Rogers*, 13 Cal. 160.)

Naturalization is held to have a retroactive effect, and is
deemed a waiver of all liability to forfeiture and a confirma-
tion of the alien's former title. (2 Blackstone, 249; 1 Johns.
Cases, 401; *Briest* v. *Cummings*, 20 Wend. 353–4; Skid-
more's Law Decisions, 66, sec. 3); therefore any defect in
Leonard's title by reason of his not having declared his in-
tention to become a citizen at the time he located this mine
was cured by his act of declaring his intention to become a
citizen before he deeded to the corporation.   This was done
before his alienage was determined or his incapacity to hold
mining claims passed upon or decided.   Leonard's declara-
tion of intention confirmed his original title; it perfected his
title as completely as it would had he made such declara-
tion prior to making the location.   But if Leonard could

not locate a claim, his inability, if not cured by his subsequent act, would not operate to invalidate the entire location, but only his interest therein.

*R. S. & W. S. Mesick,* for Respondent:

I. This action is brought under the act of the legislature of this state Feb. 10, 1873. (Comp. L. secs. 1674.) The object of the action is solely to determine which party has the better right of possession to the quartz-vein in controversy under the act of congress of May 10, 1872, providing for the acquisition of mining title.

The quartz-vein is the principal subject of contest. The surface ground is a mere incident thereto. The incident, of course, must follow the fate of the principal matter, and to lose sight of the quartz-vein, and give entire attention to the surface, is to proceed upon false premises, and liable to lead to false conclusions. A person making a location upon a quartz-vein is entitled to follow that vein wherever it goes the distance that his claim extends by linear measurement upon the vein. The boundaries of the surface, which the location of said vein is allowed to hold as incident to the vein, must be regulated according to the direction of the vein, and, of course, can never be definitely determined until the course of the vein has been ascertained by actual exploration; hence it must inevitably happen that the boundaries of the surface, or incident, shall sometimes be changed so as to correspond with the course of the vein or principal matter, when that course shall have been ascertained. Unless the appellant has the better right to the quartz-vein in question, he has no right to the surface which can avail him in this proceeding.

The precise direction in which the vein ran was not, and could not, be known until the tunnel had been constructed, and only then to the extent that the vein had been traced thereby. While the Golden Fleece Company was in the possession of and had its works upon this vein, the defendant applied for a patent under such descriptions as made it necessary for the plaintiff to protest, and bring this suit for the protection of its title to and possession of the quartz-vein in controversy.

II. There was no error in denying appellant's motion for a nonsuit. The authority cited from Wisconsin cannot be regarded, because it is in controvention of the latest decision of this court upon the same subject, and because it has no application to this case.

III. There was no error in the refusal of the district court to submit special issues to the jury. The practice act did not make it obligatory upon the court to submit to the jury the questions proposed by the defendant.

IV. Neither of the instructions mentioned in the appellant's brief, as asked by defendant to be given to the jury, and which were refused, was wholly correct, and if not they were properly refused. (16 Cal. 79.)

V. Leonard was proven to have been an alien at the time of making the location of the Golden Fleece; and, therefore, was rendered incompetent, under the laws of the United States to acquire any mining right by location, and his participation in that location rendered it void. The power of the court to try and determine the competency of locators to make a valid location is beyond question. The act of congress of May 10, 1872, explicitly declares that all valuable mineral deposits in land belonging to the United States shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States and those who have declared their intentions to become such. The effect of this provision must be to exclude all persons not belonging to either class described in that section. Under any rule of interpretation, the language of that section forbids the exploration, occupation, or purchase of any mineral deposits, or land mentioned therein, by any alien not having declared his intention to become a citizen of the United States; and also forbids any obstruction on his part to the free and open exploration, occupation, and purchase of such deposits and lands by those who may be qualified thereto. This amounts to a license or warrant on the part of the United States government to exclude from the public lands mentioned in said section all persons shown to be incompetent to explore, occupy and purchase the same.

In the case of *Buckner* v. *J. B. Coates*, in September last, the secretary of the interior affirmed the decision of the general land-office, holding that an alien can hold no title in mining claims before patent issued. If that interpretation of the law is correct, then so far as Leonard is concerned, who was clearly proven to have been an alien, the Golden Fleece ledge and ground were open and free for exploration, occupation, and purchase when the location of McDonald was made, under which the plaintiff claims.

Our state constitution and laws, or the course of proceeding in the United States land-office, or the various cases and opinions referred to in the reports, are entitled to no consideration in construing this section. The incompetency of Leonard invalidated the whole claim. We admit the principle that whenever the good can be separated from the bad, in many cases a portion may be upheld while the remainder falls; but we also insist that the rule is equally well settled, that when the good cannot be separated from the bad, the whole must fall. Now, in this case, it seems to us beyond comprehension how the interest of the other four locators can be upheld while that of Leonard fails. To whom the seven hundred and fifty feet assigned to Leonard shall be allotted; or, if allotted to his co-locators, then in what proportion to each of them, and upon what conditions, are questions which counsel for appellant has not undertaken to answer. Nor are they capable of any answer under any recognized principle of law. They present such difficulties as the courts do not grapple with for the purpose of relieving from the consequences of a fraud.

By the Court, BEATTY, J.:

The defendant herein having made application for the government title to certain mining ground, the plaintiff filed an adverse claim to a portion of the premises, and thereupon commenced this action to determine the right of possession of the ground in controversy. The trial of the case in the district court resulted in a verdict and judgment for the plaintiff, and the defendant appeals from the judgment,

and also from an order denying its motion for a new trial. The assignments of error are very numerous, but only a few of the questions involved have been fairly argued, and we shall confine ourselves to those questions.

The substance of the complaint is: That the plaintiff is the owner and in the actual possession of a claim of fifteen hundred linear feet of a lode called the Golden Fleece, and of a surface claim of three hundred feet on each side thereof; that the defendant claims some estate or interest in the said premises adverse to the plaintiff, and has applied for a United States patent for a portion thereof; that the plaintiff has protested and filed an adverse claim, and that the proceedings in the land-office have been suspended until the rights of the parties can be determined in a court of competent jurisdiction. It is further alleged, on information and belief, that defendant's claim to the ground is based upon certain pretended mining locations (describing them) which are said to be invalid by reason of the failure of the locators to comply with the law in making and recording them. Wherefore the plaintiff prays to be adjudged the owner and entitled to the possession of the disputed ground.

The answer admits an adverse claim to the ground described in the complaint, denies plaintiff's possession and right to the possession, and sets up a valid title to the ground described in defendant's application for a patent.

The testimony adduced at the trial showed that the two claims described in the complaint and answer, respectively, lie across each other. The plaintiff's claim extends from north-east to south-west fifteen hundred feet in length by six hundred in breadth, and the south-west end covers the middle of the defendant's claim, which extends from north to south fifteen hundred feet in length by six hundred feet in width.

At the trial the plaintiff introduced evidence which, if true, established the following facts, among others: The plaintiff is a Nevada corporation; at and before the commencement of this action it was mining upon a well-defined lode of silver-bearing quartz, the croppings of which were exposed within the clearly-marked boundaries of its surface

claim; that said boundaries embraced a portion of the ground claimed by the defendant, and that it had done some work within the lines of the disputed ground.

At the close of plaintiff's testimony the defendant moved for a nonsuit, and the ruling of the court denying the motion is assigned as error. The specifications under this head correspond to the grounds of the motion. The first of these, to which our attention is particularly invited, was stated as follows: "That the title of defendant, as pleaded by plaintiff, is not proven, or proven invalid."

The appellant contends that in an action of this sort the plaintiff, to escape a nonsuit, must not only prove affirmatively a *prima facie* right to the disputed premises, but must also plead and prove the particulars of defendant's claim, and prove that it is invalid. This is the doctrine of *Blasdel* v. *Williams* (9 Nev., 167), which was overruled in *Scorpion Company* v. *Marsano*, (10 Nev., 379.) We are asked to again review the question and to restore the rule of the former case upon the authority of a recent decision in Wisconsin. (38 Wis. 320.) That case, on examination, will be found to give only a partial support to *Blasdel* v. *Williams*, and we are very confident that, taking it into account, our last decision will be found to be supported as well by the number of decided cases as by the reason of the thing. A review of the question is, however, wholly unnecessary in this case, which is governed by the provisions of section 1674 of the compiled laws, passed February 10, 1873, and evidently designed to supplement section 2326 of the revised statutes of the United States, passed May 10, 1872. Under these laws the pendency of a contest in the land-office, with respect to a mining claim, gives our district courts jurisdiction to determine the right of possession as between the adverse claimants. The contestant, whether he is in or out of possession, must commence his action to determine the right within thirty days after filing his adverse claim. It would be absurd to hold that, if he happens to be the party in possession, and therefore presumably entitled to the possession, judgment must go against him, in favor of a party out of possession, unless he not only proves his own

MAP

*showing the outlines of the
location made by the*

# CABLE CONSOLIDATED
### AND
# GOLDEN FLEECE CLAIMS
*and the change of surface
boundaries made by the*
# GOLDEN FLEECE.

right affirmatively, but disproves the claim of the defendant by negative testimony.

The only sensible construction of the law is, that each party must prove his claim to the premises in dispute, and that the better claim must prevail. Actual possession, admitted or proved, makes out a *prima facie* case for the contestant, and throws upon the defendant the burden of proving a superior right in himself.

Another ground of the motion was, that the plaintiff had not shown that it was in the actual possession of the premises in controversy at the time the action was commenced.

Such proof was not necessary. A right to the possession was all it was essential for the plaintiff to prove. The complaint, it is true, alleged actual possession in the plaintiff, but that allegation was not essential to the statement of a good cause of action under the statute (C. L. sec. 1674); and the failure to prove it, if there had been a failure, would only have imposed upon the plaintiff the necessity of showing by some other means a right to the possession. But, in fact, the plaintiff did prove possession. It proved a clearly-defined surface claim, surveyed and marked by a United States surveyor in accordance with law, including a quartz-lode running with the claim, and work on the vein inside of the surface-claim, and within the lines of the disputed ground. This alone was enough to put the defendant on proof of its right. The plaintiff, however, went still further. It introduced testimony intended to show a location of the Golden Fleece claim in October, 1873, by one McDonnell, and conveyances from him. One of the grounds of the motion for nonsuit was the alleged invalidity of this location by McDonnell. There was no proof that McDonnell was a citizen, or had ever declared his intention to become a citizen. There was no proof that in making his location he had complied with any local rules or regulations of the miners of the district. The record of claim was not in accordance with the requirements of the United States mining law. When the surface lines of his claim were first marked out, the ground in controversy was

already included in the well-defined boundaries of the defendant's surface-claim.

So far as the motion for a nonsuit is concerned, it has been shown that the validity of McDonnell's location is of no consequence. The plaintiff could have rested on its actual possession without claiming anything under McDonnell. But the validity of his claim is likely to be a question in any future trial of the case, and for that reason some of the objections to it will be considered. As to the first point, it is clear that an alien who has never declared his intention to become a citizen is not a qualified locator of mining ground, and he cannot hold a mining claim, either by actual possession or by location, against one who connects himself with the government title by compliance with the mining law. This much is certain, but it is not so certain that proof of citizenship must be made in order to show a valid location. It may be that the locator, in the absence of proof, will be presumed to be a citizen. This is a question, however, which has not been argued and will not be decided.

As to the second point, it is true there was no proof of compliance with any local rules on the part of McDonnell, but there was no proof of the existence of any local rules at the time the motion for a nonsuit was submitted. The defendant afterwards proved the existence of certain local rules of the mining district, but the court knew nothing of those rules when deciding the motion. The mining laws of the United States (R. S. secs. 2318 to 2346), recognize and sanction the custom long prevalent among the miners of this coast of organizing mining districts and adopting local laws or rules governing the location, recording and working of claims. Existing rules not in conflict with state or federal legislation are ratified, and express authority is conferred upon the miners in their several districts to adopt other rules, subject to certain specified restrictions. Miners are thus permitted to make rules in addition to those prescribed by congress; but, in order that mining claims may be held and the government title acquired, it is not essential that mining districts should be organized and

local rules adopted. All that the government requires to be done in order to obtain its title or license to occupy is prescribed by the law; and, in the absence of local rules, a compliance with the public law will secure the claim. The miners, in their respective districts, may, if they choose, exact something more, but they are not obliged to do so, and no court, in the absence of proof, will presume that they have done so. In this case, the plaintiff had shown everything necessary to make a good claim under the United States mining law; that is to say, it had shown work on a vein within a well defined surface claim not exceeding fifteen hundred feet in length and six hundred feet in width. (R. S. secs. 2320, 2324.) It was not necessary to prove any record of the claim. A record is not required by the United States law, but is to be provided for, and its effect defined, by the local law. All the public law requires is that a record, to have any effect, must contain an accurate description of the *locus* of the claim, along with some other essentials. This question, however, will receive more particular attention in another connection. As to the last specification in this ground of the motion, it is true that the plaintiff's testimony did show that when its claim was surveyed and the boundaries marked, the defendant's boundaries had already been defined so as to include the ground in controversy. But the court could not assume, in deciding the motion for a nonsuit, the existence of the other facts essential to the validity of defendant's claim. It is a mistake to suppose that mining ground cannot be located if some other claimant has put stakes around it. The first claimant may not be a citizen, or otherwise capable of holding against a qualified locator, and he may not have complied with other requirements of the law, which are just as essential as the marking of boundaries. He may have forfeited, or he may have abandoned his claim. In any such case the ground is open to any citizen of the United States as completely as if no stake had ever been planted upon it. There were still other grounds specified in the motion for a nonsuit, but they have not been argued, and will not be discussed in this opinion. We think the court did not err in overruling the motion.

The next assignment of error relates to the admission, against the defendant's objection, of a pretended record of McDonnell's location of the Golden Fleece. The principal ground of objection to this so-called record was that there was no proof that the claim was situated within an organized mining district, with rules providing for the making of records. This was a good ground of objection. Proof of a record is totally irrelevant without proof of some regulation making a record obligatory, or giving it some effect. The public law does not of itself create any such office as that of mining recorder. Neither does it make the recording· of claims obligatory, or give to a record any effect. This is a matter left to the miners of the respective districts. If they make no rules requiring a record, none is required; if they give no effect to a record, evidence of a record is irrelevant. Another ground of objection to this record was that it contained no description of the claim by reference to natural objects or permanent monuments. This also was a good ground of objection, and would have been good even if there had been proof of a regulation of the district requiring a record. The mining law allows the miners to provide for the recording of claims, and no doubt it was the intention of congress that such record should have some practical effect—such as, for instance, to hold the claim for a reasonable time, until the vein could be so developed as to admit of an intelligent marking of the surface boundaries. But in order that the record should have such or any effect, it is imperatively required that it shall fix the *locus* of the claim by reference to natural objects or permanent monuments. (R. S., sec. 2324.) The court erred in overruling the objection to the record.

The motion for a nonsuit having been overruled, the defendant introduced evidence to show the existence and organization of the Peavine mining district, and its code of written regulations providing for a recorder and defining his duties. It also proved the posting and recording, by one Leonard and four others, of a notice of location of the claim described in its answer and in its application for a patent, and that said claim was situated in the Peavine dis-

trict. It proved that Leonard and his co-locators complied with the United States laws and the local rules in locating, recording and working their claim. The testimony showed that their notice of location was posted on the ground August 11, 1873, while McDonnell's location of the Golden Fleece was not made till October 4 following. If, therefore, the Leonard location was valid and was kept good by compliance with the laws as to working, marking of boundaries, etc., the defendant, if it had been allowed to prove a conveyance from Leonard and his co-locators, would have showed an older and consequently a better title to the premises than that of the plaintiff, even allowing McDonnell's location to have been made in conformity to the laws.

But Leonard, who was a witness for the defendant as to the location and recording of its claim, stated, on cross-examination, that at the date of the location he was not a citizen, and had never declared his intention to become one. The court thereupon decided that the location of the Leonard claim was wholly void, and excluded all evidence in regard to it, including the deeds of conveyance from Leonard and his associates to the defendant.

This ruling was erroneous. In the first place Leonard's testimony, that he was not a citizen when he made the location, even if it had been more positive than it was, was not conclusive against the defendant. He had parted with all his interest in the premises, and his admissions were not binding on his grantees. The question of his citizenship was one for the jury, not the court, to decide (unless indeed the presumption was against his being a citizen, but as to this the court assumed the contrary with reference to McDonnell's location), and should have been submitted to the jury under proper instructions as to the effect of a finding one way or the other.

But Leonard's testimony, so far from sustaining the conclusion that he was not a citizen, had an opposite tendency. He said that he was born in New York; that he was taken at a tender age to Ireland, and returned to this country a few years ago. He had been advised that he was not a citizen, and, acting upon this advice, had made a declara-

tion in February, 1874, of his intention to become a citizen. On this testimony alone it should have been found that he was a citizen by nativity.

But, besides this evidence tending to prove that Leonard was a citizen by nativity, besides the evidence that he had qualified himself to hold mining ground by declaring his intention to become a citizen in Feburary, 1874—long before the plaintiff had taken possession or made a valid location of the ground in controversy—it was proved and admitted that two of Leonard's co-locators (grantors of defendant) were citizens at the date of the location. In order, therefore, to exclude all the evidence as to that location, and its conveyance to the defendant, it was necessary not only to hold that Leonard's claim was void, but to hold that the claim of his co-locators was void also. This the court did in fact decide, and, we think, erroneously.

Under the law a single qualified locator may take up fifteen hundred feet of a vein with the surface ground extending three hundred feet on each side of the croppings. An association of a dozen or a hundred locators can take up no more. Here were five locators claiming in common no more than any one of them might have taken. They claimed fifteen hundred feet of the vein with the surface ground allowed by law. By figures placed opposite their respective names, as signed to the notice of location, they indicated the number of undivided feet that each was to own. Leonard's share was seven hundred and fifty feet. The rest was divided among his four co-locators, two of whom at least were citizens. Suppose, then, Leonard was not capable of making a location, how does that fact render the whole claim void? It is said that Leonard's claim was a fraud upon the law. But, admitting his claim to have been fraudulent, there is not a particle of evidence tending to show that his co-locators were aware of his disability, or that they were colluding with him in his attempted fraud. They certainly were not guilty, and it would be a harsh rule indeed to make them suffer for the fraud of Leonard, merely because they were willing to admit him to a share in a location which they might have taken to themselves

alone.  The law in such cases will be sufficiently vindicated by holding that the alien's claim is void.  And this course will not lead to the difficulties apprehended by counsel for respondent.  It is not necessary to decide what would become of his claim.  It might be open to location by a stranger, or it might have to be distributed among the qualified owners.  Counsel for respondent think it would have to be distributed among the qualified owners unless the whole claim is held void, and, assuming that there is no rule of law by which such distribution could be made, they argue that the only alternative is to declare the claims of all the locators void.  We think, however, that there would be no greater difficulty in making the distribution, if it had to be made, than there would be in the case provided for in the mining law where one of several co-owners refuses to contribute his share of the work necessary to preserve the claim.

The court erred, therefore, in excluding the conveyances from the locators of the Leonard claim; first, because the evidence would have warranted the jury in finding that Leonard was a citizen; second, because he declared his intention to become a citizen before he conveyed to defendant, and it was a question for the jury to decide whether at the time he thus became qualified to hold a mining claim plaintiff or its grantors had acquired any adverse rights; third, because if Leonard had no title to convey, his colocators did have an undivided interest in the location at least, if not the whole of it, and did convey to the defendant.

For this error the judgment must be reversed and the case remanded for a new trial.  But the court also erred in deciding another important question, which must arise at the next trial, and which ought, therefore, to be noticed in this opinion.

There was testimony going to show that when the Golden Fleece was originally located the vein was supposed to run northwest and southeast, and that the surface-claim was so marked out on the ground; that subsequently and long after the Leonard claim had been located, according to its present boundaries, and even after the official survey made for

the purpose of the application for a patent, the plaintiff, discovering that the vein ran northeast and southwest, swung its claim around almost at right angles to its former position, had a new survey made and planted its present boundary stakes so as, for the first time, to include any portion of surface-ground in dispute. In view of this testimony the defendant asked several instructions, which were refused, to the effect that the plaintiff was bound by its original marking of boundaries in favor of a subsequent locator.

Counsel for respondent justify the refusal of these instructions on the ground that its location was of the vein, as the principal thing, and of the surface as a mere incident thereto, and that when the mistake in the direction of the vein was discovered, it had a right to change the lines of its surface claim, even though by so doing it encroached upon the claim of a subsequent locator. Undoubtedly, this was the law as applied to locations made under the miners' rules formerly in force. Under those rules a location could be made, and commonly was made, by posting a notice in reasonable proximity to the point at which a lode was discovered or exposed, stating that the undersigned claimed so many feet of the vein extending so far, and in such direction or directions from the discovery point, together with the amount of adjacent surface ground allowed by the rules of the district. This notice, so posted, had the effect, under the rules, of holding the ground described a certain length of time—commonly ten days—after which it was necessary to have the notice recorded by the district recorder in order to keep the claim good, and to follow up the record by doing a certain amount of work every month or every year. This was substantially the mining law of the Pacific Coast for the location, recording and holding of claims; and a compliance with these rules stood in the place of actual possession within defined boundaries and was allowed the same effect. The claim was defined by the terms of the notice and not by posts and monuments erected on the surface of the earth. The notice claimed so many feet of the vein with the adjacent surface. If subsequent de-

velopments demonstrated that the course or strike of the vein differed from that mentioned in the notice, the locator was still allowed to follow the vein to the extent claimed, because there was no difficulty in reconciling the description in the notice with the deflection in the vein from its apparent course at the discovery point, and because the claim in fact was of so much of the vein wherever it might run. As the surface ground allowed by the miners' rules was a mere incident to the vein and was to be adjacent to it, and was never marked by posts or monuments any more than the vein itself, it followed, as a matter of course, that when the true course of the vein was discovered the surface ground was located in conformity to it.

In this case, however, the plaintiff does not base his claim on compliance with any mining rules. It has proved nothing more than an actual possession of its claim, or, at most, a substantial compliance with the United States law in marking out a surface claim and working on the lode within its boundaries. Under that law it cannot be doubted that it is bound by the lines of its surface claim in favor of a subsequent locator. It is true that the vein is the principal thing and the surface is but an incident thereto; but it is also true that the mining law has provided no means of locating a vein except by defining a surface claim, including the croppings or point at which the vein is exposed, and the part of the vein located is determined by reference to the lines of the surface claim. Those lines are fixed by the monuments on the ground, and they cannot be changed so as to inferfere with other claims subsequently located.

We wish to be clearly understood as giving a construction to the law of congress, standing alone and unaided by any local rules. Under the law miners are allowed to make rules in regard to the location and recording of claims; and it would seem to have been the intention of congress to sanction some such rules as formerly prevailed on this coast, under which the posting of a notice would hold a claim on the vein a reasonable time, during which the locator might make a survey of the location point with reference to natural objects or permanent monuments in the neighborhood.

He could then append a sufficient description of the *locus* of his claim when he had it recorded, and the record might then be allowed to hold the claim for a further reasonable time, until the vein was so far developed as to admit of a correct establishment of the surface lines. This would seem to be a more reasonable view of the meaning of that provision of the law allowing miners to make supplementary rules than that taken by the commissioner of the land-office. (See his instructions to surveyors, etc., dated February 1, 1877.) He appears to think that no regulation of the miners can dispense with the marking of the boundaries of the surface claim as the very first step toward a location. If this is so, it is difficult to see what office a notice of location and the recording of it have to perform. The requirements of the law as to what the record shall show are evidently designed to fix the *locus* of the claim, in order to prevent floating. But the monuments defining the claim on the ground answer this purpose better than the record, and if they are to be erected in the beginning, there can be but little use ever to make a record; and, in fact, it is not made obligatory by the law, as we have shown in another connection.

These questions, however, in regard to what rules the miners may make, are not involved in this case, and are not decided. What has been said in regard to the matter has been said only for the purpose of avoiding any misunderstanding of the points that are decided. All that is decided in respect to this last assignment of error is, that under the law of congress, unaided by any supplementary miners' rules, there is no way of locating a quartz vein except by marking out surface-lines, and that when these lines have been marked they cannot be changed so as to take in ground that has been located by others prior to such attempted change.

The judgment and order appealed from are reversed and the cause remanded.

Hawley, C. J., concurring:

I concur in the judgment of reversal, upon the grounds stated in the opinion of the court.

As to the last point discussed in the opinion, I agree that the original locator cannot swing his surface location so as to claim any other surface-ground. He is, so far as the surface-ground is concerned, bound by the lines designated upon the surface. (U. S. Mining Laws, sec. 2322.) But I do not believe that under what seems to me to be a fair and reasonable construction of section 2322, it was the intention of congress, by the passage of the mining laws, to prohibit the first locator of a quartz lode from following his vein, with all its dips, spurs, angles and variations, along its course, to the full number of feet expressed in the notice of location, not exceeding fifteen hundred feet and not extending "through the end lines of his location," in whatever direction it runs, irrespective of the vertical side lines of the surface boundaries. Although the question as to the right of a party thus to follow his lode is not directly denied in the opinion; yet I do not desire to indorse any of the reasoning of the court, which would seem, even by inference, to be at variance with the views I have expressed.