# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

### JANUARY TERM, 1882.

[No. 1089.]

## E. H. ROSE ET AL., APPELLANTS, v. RICHMOND MINING COMPANY OF NEVADA, RESPONDENT.

STATEMENT ON APPEAL—EVIDENCE TO BE INSERTED.—When appellant does not rely upon the insufficiency of the evidence to sustain the findings of the court, it is only necessary to insert so much of the evidence, in the statement on appeal, as is necessary to explain the particular errors relied upon.

IDEM—SPECIFICATION OF ERRORS—WHEN SUFFICIENT.—The specification of errors, as set forth in the statement on appeal, reviewed and held to be sufficient.

ACTION TO DETERMINE RIGHT OF POSSESSION OF MINING CLAIM—SUFFICIENCY OF COMPLAINT UNDER SECTION 1674. (1 COMP. L.).—In an action to determine the right of possession to mining ground, where an application for a U. S. patent has been made, a complaint, which substantially conforms to the language of the statute: Held, sufficient.

COMMENCEMENT OF ACTION—WAIVER OF SUMMONS.—A defendant by filing a demurrer and answer to plaintiff's complaint waives the issuance of a summons.

IDEM—PAYMENT OF DOCKET FEE.—The fact that the docket fee (2 Comp. L. 2766-7) was paid by the clerk instead of the plaintiff cannot be taken advantage of by defendant.

OBJECTIONS TO PROTEST—WHEN SHOULD BE MADE.—An objection that a protest does not show "the natural boundaries and extent" of the mining claim should be made in the land office where the protest is filed.

VOL. XVII—4

Points decided.

SUFFICIENCY OF PROTEST.—A protest claiming only two hundred feet in width upon the surface of a mining claim or lode, which is more than two hundred feet in width : *Held*, upon the facts of this case, sufficient to show "the nature, boundaries and extent" of the claim.

WHEN ACTION TO DETERMINE RIGHT OF POSSESSION TO MINING CLAIM MAY BE MAINTAINED—POSSESSION BY BOTH PARTIES.—Where the findings of the court show that both parties were in possession of different portions of the same lode, and the character of their possession is particularly defined : *Held*, that the party having the better right to the possession of the lode must prevail and is entitled to maintain the action.

RELOCATION OF MINING CLAIMS—WHEN CANNOT BE MADE.—A party cannot locate a valid claim to a lode already located and legally possessed by others. Mining claims are not open to relocation until the rights of a former locator have been abandoned, forfeited, or otherwise come to an end.

CLAIM FOR DISCOVERY INTEREST UPON LODE PREVIOUSLY DISCOVERED—EFFECT OF.—Where parties locate an interest for discovery upon a lode previously discovered, but not known to be upon the same lode at the time the location is made : *Held*, that the location is not entirely void; that if voidable at all, it is only as to the extent of the discovery interest.

APPLICATION FOR U. S. PATENT—JURISDICTION TO DECLARE ADVERSE CLAIM WAIVED BELONGS TO THE COURTS.—The question whether an adverse claim has been prosecuted with reasonable diligence, as required by U. S. Rev. Stat., sec. 2326, must be determined in the court which has acquired jurisdiction of the case. It cannot be determined by the officers of the land department of the government.

U. S. PATENT—WHEN VOID.—If the statute of the United States has not been complied with and a patent is issued without authority of law it is absolutely void.

IDEM—LAND RESERVED FROM SALE.—After the commencement of an action to determine the right of possession to mining ground, for which an application for a patent has been made, the ground is reserved from sale and no patent can be legally issued therefor until the pending contest is settled and determined by the courts.

IDEM—SECOND APPLICATION FOR PATENT.—A party after applying for a patent to a mineral lode under a given name, cannot, after a contest is raised in the courts and whilst it is pending, legally make a second application under another name to the same lode.

IDEM—PROTEST.—The party protesting against the first application and bringing suit is not required, while the previous contest is pending, to protest against the second application.

INVALIDITY OF PATENT—WHERE QUESTION CAN BE RAISED.—Where a patent is issued without authority of law, the question of its invalidity can be raised and determined in any proceeding. either in law or equity.

RELIEF TO BE GIVEN WHEN PATENTS ARE ILLEGALLY ISSUED.—When the officers of the government are authorized to act and, by an erroneous construction of the law, issue a patent to the wrong party, a decree may be entered declaring such party to be the holder of the patent in trust for the party entitled to it; but this rule has no application to a case where the patent is issued without authority of law. In such a case the holder acquires no rights whatever and has none to convey.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The specification of errors referred to in the opinion are as follows :

I. Error of the court in adjudging that the claim of title and right of possession of the plaintiffs to that portion of the mining lode, claim and premises in controversy, described in plaintiffs' complaint as the Uncle Sam, lying between the end lines of the Victoria patented claim of defendant, extending from the quartzite foot wall to the shale hanging wall, and lying southeasterly of the line " K. L." drawn on the diagram exhibit "A," annexed to the judgment and decree herein, said line being a continuation of the northwest end line of the said Victoria claim from the quartzite foot wall to the shale hanging wall, or to any part or parcel of said Uncle Sam lode, claim and premises is without right, invalid and void, and in adjudging that the claim of the defendant thereto, or to any part thereof, or to the right of possession thereof, is good and valid.

II. Error of the court in adjudging that defendant is the owner, in the possession, and entitled to the possession of that portion of the mining claim, lode and premises described in plaintiffs' complaint, and therein designated as the Uncle Sam, lying between the end lines of the aforesaid Victoria mining claim, extending from the quartzite foot wall to the shale hanging wall, or of any part or portion of said lode, claim and premises.

III. Error of the court in vacating and dissolving the injunction heretofore granted in this action restraining the defendant, in so far as it relates to that part of the lode or premises easterly of said line " K. L.," as shown on said diagram " A," and in not making the said injunction perpetual as to such portion of said lode and premises.

IV. Error of the court in failing to adjudge plaintiffs to be the owners, in the possession, and entitled to the possession of all that portion of the said claim, lode and premises described in their complaint as the Uncle Sam, lying northwest of the northwesterly end line of the Tip Top claim, as found by the

court and designated on the map exhibit " H " as line "A. C. ;"
and in adjudging the defendant to be the owner, in the pos-
session, or entitled to the possession of any part of the afore-
said lode, claim and premises.

V. Error of the court in finding as a conclusion of law that
the patent of the United States, heretofore issued to the
defendant, the Richmond Mining Company of Nevada, for the
Victoria mining claim and premises described in the findings
of fact, is good and valid, and in finding as a conclusion of
law that said patent vests in defendant a good and valid title
in and to all that portion of the lode and premises lying east-
erly of line " K. L.," as shown on exhibit " A " of the find-
ings of fact herein, and in finding as a conclusion of law that
by virtue thereof the said defendant is the owner at law and
in equity of the said premises and of every part thereof.

VI. Error of the court in finding as a conclusion of law that
the adverse claim of the defendant in and to the said premises
is not without right and invalid or void, but that the same is
good and valid.

VII. Error of the court in finding as a conclusion of law
that the claim and title of the plaintiffs herein to the premises
lying easterly of the said line " K. L." is without right and is
invalid and void.

VIII. Error of the court in failing to find and adjudge the
patent of the United States for the Victoria claim is invalid,
void and of no effect.

IX. Error of the court in failing to find and adjudge that the
defendant, the Richmond Mining Company of Nevada, holds the
apparent legal title to the premises in controversy, derived by
it from the United States under and by virtue of its patent
for the St. George lode and claim, in trust for the plaintiffs to
the extent of plaintiffs' adverse claim, as shown in the protest
filed in the land office, attached to findings, and that said
defendant should convey to plaintiffs such portion of the said
lode and premises.

X. Error of the court in failing to find and adjudge that
defendant, the Richmond Mining Company of Nevada, holds
apparent legal title to the premises in controversy, derived by
it from the United States, under and by virtue of its patent

for the Victoria lode and claim, in trust for the plaintiffs, to the extent of the conflict between the said Victoria claim and the claim of plaintiffs, and that said defendant should convey to plaintiffs such portion of the said lode and premises.

XI. Error of the court in rendering a judgment for the defendant for that portion of the said Uncle Sam claim and lode lying southeasterly of the said line "K. L."

XII. Error of the court in failing to render judgment for the plaintiffs for that portion of the said Uncle Sam claim and lode lying southeasterly of said line "K. L."

The findings of the court, and the facts of this case, sufficiently appear in the opinion.

*Baker & Wines, William M. Stewart, William F. Herrin* and *W. S. Wood,* for Appellants:

I. The plaintiffs having properly protested against the St. George application, and commenced this suit to determine the right of possession, no further proceedings could be taken in the land department concerning the sale of the lode in question until the determination of the controversy by the court. (U. S. Rev. Stat., sec. 2326.)   In issuing the St. George patent, the commissioner of the general land office assumed the jurisdiction to decide whether this suit had been prosecuted with reasonable diligence or not, but under the statute such question must be decided by the court in which the suit is pending, or else the commissioner would have the power to deprive the court of its jurisdiction of the controversy at any time while the suit is pending; or he might, even after the court had tried the suit and given judgment on the merits in favor of the adverse claimant, decide that the suit had not been prosecuted with reasonable diligence, and thus, in either case, lawfully disregard and render nugatory the judgment of the court.   In this way the rights of the adverse claimant would be subject to decisions of land officers, made without notice upon *ex parte* applications, while if all matters in the controversy were properly left to the court, the rights of each party would be fully protected. If the suit was not prosecuted with reasonable diligence, the court would dismiss the same upon the proper application of the defendant.

II. The plaintiffs can elect to receive the benefit of this patent, being entitled to the same, and the court below should have adjudged in this action, that the defendant holds this patent for its rightful owners—the plaintiffs—and have compelled the defendant to convey the legal title under the patent to the plaintiffs. (*Sherman* v. *Buick*, 3 Otto 209; *Stoddard* v. *Chambers*, 2 How. 284, 15 Cur. 119; *Newhall* v. *Sanger*, 2 Otto, 761; *Morton* v. *Nebraska*, 21 Wall. 660; *Polk's Lessee* v. *Wendal*, 9 Cr. 87, 3 Cur. 276; *Silver* v. *Ladd*, 7 Wall. 219; *Ryan* v. *Railroad*, 9 Otto, 382; *Patterson* v. *Winn*, 6 Cur. 632; *Haire* v. *Baker*, 5 N. Y. 357; *Cunningham* v. *Ashley*, 14 How. 389; 20 Cur. 244; *Garland* v. *Wynn*, 20 How. 7; *Lindsey* v. *Hawes*, 2 Black, 562; *Johnson* v. *Towsley*, 13 Wall. 85; *Cavalli* v. *Allen*, 57 N. Y. 514; *Crary* v. *Goodman*, 12 N. Y. 266; *Dewey* v. *Hoag*, 15 Barb. 365; *Giles* v. *Lyon*, 4 N. Y. 600; *Heydenfeldt* v. *Daney G. & S. M. Co.*, 10 Nev. 290; *Stark* v. *Starrs*, 6 Wall. 419.) These cases establish the law to be that where one party has obtained from the United States a patent to land to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title to such owner. The reason and justice of this rule is made apparent when we consider the facts of this case. Here the plaintiffs had, as is established by the findings of the court below, the superior right to purchase from the United States the lode in question. The laws of the United States, in the same manner as a contract, bound them to convey to the plaintiffs the title to this lode. But in violation of the rights of plaintiffs, and against and without authority of the law, the St. George patent was issued to the defendant. By this patent the legal title passed from the United States to the defendant; but in any court where the plaintiffs can maintain their rights, this patent must be held void and of no effect as against such rights. As against any person not having a right superior to the defendant, this patent would be valid, so it is not void in the extreme sense. It is void only when opposed to the plaintiffs' superior rights violated by its issuance, or when attacked by the United States by suit for its annulment. The United States can maintain such suit upon the ground that they cannot fulfill their engage-

ment with the plaintiffs (to whom they stand bound for a legal title) until the St. George patent is annulled, for by such patent the United States was divested of the legal title. (*United States* v. *Hughes*, 11 How. 568–9; *Hughes* v. *United States*, 4 Wall. 235–6.)

III. If the decision of the lower court as to the St. George patent is correct, its decision as to the Victoria patent is certainly erroneous, and the judgment must be reversed as it is founded upon the validity of the Victoria patent. If the applicant has complied with the law as to his location, work thereon, and application for a patent, his right to a patent becomes vested, at the expiration of the sixty days' publication, as against all persons who have not filed adverse claims. The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. (*Stark* v. *Starrs*, 6 Wall. 418; *Carroll* v. *Safford*, 3 How. 441, 15 Cur. 509; *Lessee of French* v. *Spencer*, 21 How. 240; *Myers* v. *Croft*, 13 Wall. 295; *Barney* v. *Dolph*, 97 U. S. 656.) The applicant having acquired this vested right is not bound to protest against a subsequent application for a patent. If the law required such protest, then a subsequent application for a patent would cut off the vested right to a patent acquired under a prior application. In other words, a junior patent on a junior application would be better than a prior patent on a prior application. This would be reversing the order of things, and making the last in time first in right. Under the law, the government assumes the obligation to grant the patent in the pending proceedings according to the judgment of the court, and not otherwise. In making the sale of the lode, the government acts as a private land proprietor, rather than in a governmental capacity, and it has no more right to violate its obligation or contract with these parties than an individual would have to do the same thing. (*Aldrich* v. *Aldrich*, 37 Ill. 36; *United States* v. *Hughes*, 11 How. 568.)

IV. The court below had ample power to give the plaintiffs full relief in this action by compelling the defendant to convey to them the legal title to the lode in dispute. In this state there is but one form of civil action for the enforcement or protection of private rights and the redress or prevention of

private wrongs. (1 Comp. L. 1064.) In such action, both legal and equitable rights can be considered and determined, and both legal and equitable remedies can be given. (*Rose* v. *Treadway*, 4 Nev. 460–1; Pomeroy on Rem. secs. 34, 78; *Dobson* v. *Pearce*, 12 N. Y. 165; *Crary* v. *Goodman*, • 12 N. Y. 268; *Phillips* v. *Gorham*, 17 N. Y. 274–5.) The plaintiffs were entitled to prove at the trial, any facts which, either in law or equity, would defeat these patents in the hands of the defendant. (*Cahill* v. *Hirschman*, 6 Nev. 60; *Bryan* v. *Maume*, 28 Cal. 244; *Herold* v. *Smith*, 34 Cal. 123; *Stringer* v. *Davis*, 35 Cal. 29; *Doyle* v. *Franklin*, 40 Cal. 110; *Hart* v. *Cooper*, 47 Cal. 78; *Curtiss* v. *Sprague*, 49 Cal. 301; *Clark* v. *Harwood*, 8 How. Pr. 470; *Devlin* v. *Bevins*, 22 How. Pr. 290; *Dambman* v. *Schulting*, 4 Hun. 50; *Johnson* v. *White*, 6 Hun. 587; *Phillips* v. *Gorham*, 17 N. Y. 270; *Sheehan* v. *Hamilton*, 2 Keyes, 307–8; *Hodges* v. *Hunt*, 22 Barb. 152; *Waddle* v. *Morrill*, 26 Wis. 611; *Finley* v. *Brown*, 22 Iowa, 540; *Noble* v. *Steamboat Northern Ill.*, 23 Iowa, 111; *Barger* v. *Farris*, 34 Iowa, 230; Pomeroy on Rem., sec. 588; Green on Pl., secs. 6, 858.)

V. The plaintiffs can demand any relief to which they are entitled upon the facts provable under their implied replication. In this case such facts entitle the plaintiffs to a conveyance from the defendant of the title wrongfully acquired under the St. George patent, and it is the duty of the court to grant the plaintiffs such relief, as the same is consistent with the case made by the complaint and embraced within the issues formed by the written and implied pleadings. (1 Comp. L. 1211; Bliss on Code Pl., secs. 161, 166, 167, 168; *Rindge* v. *Baker*, 57 N. Y. 222–3; *Lane* v. *Gluckauf*, 28 Cal. 294; *Cassacia* v. *Phœix Ins. Co.*, 28 Cal. 631; *Emery* v. *Pease*, 20 N. Y. 63; *Winsted Bank* v. *Webb*, 39 N. Y. 328.)

VI. Plaintiffs' cause of action remained the same, after the issuance of the St. George and Victoria patents, as when the suit was commenced. The cause of action is, and has been at all times, the denial by the defendant of plaintiffs' right to the lode in dispute, and the denial of this right by setting up the St. George and Victoria patents does not create a new cause of action. (Pomeroy on Rem., sec. 455; Bliss on Code Pl., sec. 115.)

VII. The Uncle Sam claim is valid for its entire length, including the two hundred feet located for a discovery claim. The construction universally given this law by the miners, under the law of 1866, was that the miner is entitled to an additional discovery claim for his discovery of a lode within the limits of the claim located. Usage is one of the best guides in the construction of the statute. (Sedg. on Const. of Stat. 215 ; Lawson on Usage and Customs, sec. 223.) If there could have been any doubt as to the correctness of the construction put upon the statute by the custom and practice of the miners, such doubt was entirely removed by the act of 1872, the second section of which declared that all mining claims theretofore located should "be governed as to length along the vein or lode by the *customs, regulations* and laws in force at the date of their location." This was an express recognition of the custom of locating discovery claims, as it had existed in the Eureka mining district and other mining districts throughout the coast, prior to the passage of the act of 1872. In addition to this, the law of 1872 defined the discovery required for the location of the claim to be a discovery of the lode within the limits of the claim located. This is precisely the meaning which had theretofore attached to the word "discovery" in the act of 1866, as was intended by congress and understood and practiced by the miners.

*Robert M. Clarke,* for Respondent:

I. There is no statement on appeal which the court can consider. What purports to be a statement specifies no errors occurring at the trial—contains no evidence and no sufficient assignment. The judgment roll alone can be looked to. This is regular on its face and the judgment must be affirmed.

II. On appeal from the judgment the court will not consider errors which do not exist on the judgment roll, unless such errors are embodied in the statement on appeal or bill of exceptions, and therein particularly specified as the errors upon which the party appealing intends to rely. (Civ. Pr. Act, sec. 332. Comp. L., vol. 1, sec. 1393. *Corbett* v. *Job,* 5 Nev. 201; *Meadow Valley M. Co.* v. *Dodds,* 6 Nev. 261; .

*Sherman* v. *Shaw,* 9 Nev. 148; *Barrett* v. *Tewksbury,* 15 Cal. 354; *Burnett* v. *Pacheco,* 27 Cal. 408; *Reynold* v. *Lawrence,* 15 Cal. 359; *Wixson* v. *B. R. & A. W. & M. Co.,* 24 Cal. 367, 372; *Walls* v. *Preston,* 25 Cal. 59; *Millard* v. *Hathaway,* 27 Cal. 119; *Crowther* v. *Rowlandson,* 27 Cal. 376; *Croset* v. *Whelan,* 44 Cal. 200.)

III. The findings of fact are no part of the judgment roll. (*Imperial Silver M. Co.* v. *Barstow,* 5 Nev. 252.)   To entitle the court to consider the findings they must, therefore, be embodied in a statement, and the grounds of objection to them must be particularly specified.   (*Bowker* v. *Goodwin,* 7 Nev. 135.)

IV. No objection " for want of a finding or for a defective finding of the facts " can in the first instance be taken advantage of in this court.   The objection must be taken in the court below and " the particular defects specifically and particularly designated."   (Comp. L., 1669; *Warren* v. *Quill,* 9 Nev. 259; *McCluskey* v. *Gerhauser,* 2 Nev. 47; *Whitmore* v. *Shiverick,* 3 Nev. 289.)   Since every fact necessary to support the judgment of the court will be presumed in the absence of a specific finding to the contrary (*City of Oakland* v. *Whipple,* 39 Cal. 112; *Smith* v. *Penny,* 44 Cal. 161; *Lovell* v. *Frost,* 44 Cal. 471) it follows that the objection that the findings are insufficient is untenable and cannot be raised in a statement on appeal from the judgment.

V. There is no specification of error in the record that the judgment is contrary to the findings.   Nowhere in the assignment of errors is it said either that the findings are insufficient to support the judgment, or that the judgment is contrary to the findings, or that upon the findings the judgment should have been for appellants.   It is nowhere indicated upon what the objection rests, whether upon the findings or the judgment roll, or both, or upon the evidence.   The specifications are insufficient in substance and in form.   Tested by principle or by the decided cases they will be found wholly defective. (*Wilson* v. *Wilson,* 45 Cal. 399, 405; *City of Stockton* v. *Creanor,* 45 Cal. 247; *Goodrich* v. *Van Landigham,* 46 Cal. 601, 603; *Squires* v. *Foreman,* 10 Cal. 298; *Hutton* v. *Reed,* 25 Cal. 478; *Haggin* v. *Clark,* 28 Cal. 162; *Carlton* v.

*Townsend*, 28 Cal. 219; *Corbett* v. *Job*, 5 Nev. 201; *Meadow Valley M. Co.* v. *Dodds*, 6 Nev. 261; *Sherman* v. *Shaw*, 9 Nev. 148.)

VI. This suit is brought in equity to quiet title, and in order to maintain it, plaintiffs must have been in possession when the suit was brought. (Civ. Pr. Act, sec. 256; Comp. L. 1317; *Lake Bigler R. Co.* v. *Bedford*, 3 Nev. 399; *Blasdel* v. *Williams*, 9 Nev. 161; *Scorpion S. M. Co.* v. *Marsano*, 10 Nev. 370; *Rico* v. *Spence*, 21 Cal. 504; *Lyle* v. *Rollins*, 25 Cal. 437; *Loring* v. *Downer*, 1 McAl., C. C. 360; *Bayerque* v. *Cohn*, Id. 113.)

VII. The judgment of the court below is correct, and should be sustained, for the reason that defendant has title in fee to the ground, vested in it by patent from the United States, which patent was acquired without protest or objection, and which is valid upon its face and is not attacked for any irregularity or defect by the pleadings. There are no pleadings attacking the patent and no facts averred upon which a decree of annulment could be based. The facts found by the court do not warrant such a decree. It is an elementary principle, as old as the law, and a statutory principle as old as the civil practice act of this state, that the court can try such issues only as are joined in the pleadings, and can grant to the plaintiff such relief only as is " consistent with the case made by the complaint and embraced within the issue." (Civ. Pr. Act, sec. 39, 46, 150; Bliss on Code Pl., secs. 138, 159, 160, 161; *Marshall* v. *Golden Fleece*, 15 Nev. 156; *Burton* v. *Leroy*, 5 Saw. 510, 524, 525.) A party must recover according to the case made by the complaint or not at all— *secundum allegata* as well as *probata*. (Bliss on Code Pl., sec. 161; *Rome Exchange Bank* v. *Eames*, 1 Keyes, 588.) The Victoria patent is not void upon its face. It is in every respect formal and perfect. It is issued in a case authorized by law. It is to a person entitled to purchase, to-wit: A citizen of the United States—it is for land containing valuable mineral deposits belonging to the United States which is purchasable, and which the land department has authority to patent. (Rev. Stat. U. S. 2319, 2320, 2325.) It is only a patent void upon its face that can be attacked collaterally or

otherwise than by a bill in equity. (*Mounsey* v. *Drake*, 10 Johns, 25; *Stark* v. *Mather*, 12 Am. Dec. 565; *Yount* v. *Howell*, 14 Cal. 465, 469.) Pleading title in defendant was only an affirmative method of denying title in plaintiff. (*Frisch* v. *Caler*, 21 Cal. 71, 74; *Doyle* v. *Franklin*, 40 Cal. 106, 110; *Goddard* v. *Fulton*, 21 Cal. 430, 435, 436.)

VIII. It is not found that the Victoria patent is invalid. There was no application below for additional findings, and no exception " for want of a finding or defective finding," and the judgment cannot be reversed upon that ground. (1 Comp. L. 1669.) Besides, no such error is specified in the statement. Not only is the Victoria patent valid on its face, and conclusive of defendant's right ·in this case, but it is valid and conclusive against the plaintiffs in any case which can be brought. It is a patent issued under the mining act for mineral land upon a mining location to a citizen of the United States. It was issued upon application made to the local land office and upon proper notice as prescribed by law. It was issued without any protest or objection on the part of plaintiff or other person. (*Eureka M. Co.* v. *Richmond M. Co.*, 4 Saw. 302, 318.)

IX. The defendant has title in fee and should have judgment in this suit ·under the St. George patent, which is not only valid upon its face, but is not attacked by the pleadings; and which patent being valid on its face, under the facts found is conclusive against the plaintiffs in any case which they can state. Having failed to commence their action by filing a complaint, issuing a summons and paying the docket fee within thirty days after filing their protest, appellants waived their adverse claim, and they have no longer any rights to a patent for the land. (Rev. Stat. U. S. 2326; Comp. L. 1085, 2766, 2767; *Eureka M. Co.* v. *Richmond M. Co.*, 4 Saw. 318.)

X. Having failed to prosecute the suit with reasonable diligence the adverse claim was waived. (Rev. Stat. U. S., sec. 2326.) Having waived their adverse claim, appellants have no standing in court. Having by their laches lost their right to contest respondent's application, they are concluded by the patent. So far as this case is concerned, and as affecting the proceedings before the land office for a patent, it were as

though no protest had been filed and no suit had been brought. A suit after the time has expired is in legal effect no suit at all. But it is said the question of waiver is not for the department but for the court to decide. It is not true—it cannot be—that the land department, before which, under the law, a contest is pending respecting the right to purchase mineral land, has not the power to decide that one of the contestants has waived his right; has not the jurisdiction to decide that the adverse claimant has forfeited or abandoned his adverse claim. Suppose after protest filed, the adverse claimant should fail to bring any suit at all, is it possible the mere filing of the protest would stay the hand of the land department and suspend the patent application indefinitely? The power to determine the fact of suit must exist somewhere, and, as the example stated demonstrates, can only exist in the department. The rule is not different when applied to a case like the present, where, although suit was brought, it was too late to have any legal effect. Suppose the adverse claimant should formally and expressly waive his adverse claim, will it be pretended that the mere pendency of the suit would prevent the land department from taking cognizance of the express waiver, and prevent the issuance of patent or invalidate a patent issued under the circumstances stated? But what difference can be stated between a waiver which is express and one which is implied by law from existing facts? Under the laws of congress the land department is created and vested with the power to dispose of the public mineral lands. Upon this subject the state courts have only such power as is expressly delegated and vested in them by the United States. Touching the matter in controversy, the state court is vested with the power to determine the question of the right of possession, and nothing else. No other power is granted. All other questions are reserved to the land department. Now the question of waiver of " adverse claim," whether it arise by failure to sue in time or to prosecute the suit with reasonable diligence, is not involved in the right of possession, and is not, therefore, withdrawn from the land department and delegated to the court.

XI. The Uncle Sam location, under which appellants claim

and in virtue of which they must recover, if at all, is in excess of the law, and is invalid. No patent can be obtained for it. It is insufficient to warrant or support a judgment in this case. Rose neither discovered the "lode" upon which the Uncle Sam location was made nor the mining ground or claim embraced within its limits. The location is in excess of the law, unless the custom of location mentioned in the findings, and urged by counsel, enlarges the right given by the letter of the statute. Except as to the discoverer of the lode the right of each locator is limited to two hundred feet. (Mining Act, July 26, 1866, sec. 4.) The custom or usage "of a majority of the miners of the district" has not the force of the law; is not sufficient to constitute a "regulation" of the miners of the district. To have the force of law a custom must be the custom of all, not part of the miners of the district. It is of the very essence of a custom that it should be general, known and universally acquiesced in. Length of time, universality and knowledge and acquiescence on the part of those who are effected by it are the essential, indispensable elements of every custom. No custom can contravene a statute law, nor can any custom exist in relation to matters regulated by law. (Bouvier's Law Dic. 359; 8 M. R. 309.) The power which the miners have is vested in them by statute. It is vested in them as a body, not as individuals, and it is a power not to make regulations generally, but to "make regulations not in conflict with the laws of the United States," etc. (Rev. Stat. U. S., sec. 2324.) If it be true, as we have shown, that the act of congress limits the right of location to two hundred feet for each locator, except in the case of the discovery of the lode, it is clear that a custom of miners, granting a discovery claim in cases where no lode has been discovered, is an enlargement of the grant of congress and is in direct violation of the act. By express letter of the statute the discovery claim is limited "to the discoverer of the lode." It was not intended to encourage locations merely and reward the locator, but to encourage prospecting and reward the discoverer of a lode. Neither the land office nor this court can reduce appellants claim or compel an election. If appellants recover, it must be of the whole, and cannot be

of part.   But as we have seen, appellants have no legal claim
to the whole.   Their claim is for two hundred feet more than
the law allows.   The claim which they assert is illegal and a
fraud upon the government.   The court cannot say which two
hundred feet shall be cut off, nor which six hundred feet shall
remain; nor can the court say that any six hundred feet has
ever been located by marking the boundaries or otherwise, as
required by law.

*Wren & Cheney* and *Crittenden Thornton*, also for Respondent :

I.  This court will not reverse the judgment unless it affirmatively appears that error has been committed.   All presumptions will be in favor of the correctness of the judgment.
(*Nosler* v. *Haynes*, 2 Ver. 69; *Lady Bryan G. & S. M. Co.*
v. *Lady Bryan M. Co.*, 4 Nev. 414.)

II.  The complaint does not state facts sufficient to constitute a cause of action.   The complaint, treated as a pleading
under section 256 of the practice act, is insufficient.   It does
not allege either that the adverse claim of the defendant is
invalid or void or without right, or state any facts from which
such a consequence would necessarily follow.   Such an omission is a fatal defect.   (*Austin* v. *Goodrich*, 49 N. Y. 266;
*Bailey* v. *Briggs*, 56 N. Y. 407.)   The allegation lacking in
this case has been made in every complaint of the kind we
ever met with in the books.   (*Blasdel* v. *Williams*, 9 Nev.
169; *Scorpion M. Co.* v. *Marsano*, 10 Nev. 379; *Golden
Fleece Co.* v. *Cable Co.*, 12 Nev. 320; *Curtis* v. *Sutter*, 15
Cal. 266; *Lyle* v. *Rollins*, 25 Cal. 437.)   The complaint is
insufficient under section 1674 of the compiled laws.   It
alleges that the plaintiffs are the owners and in possession
of the premises in controversy, and that the defendant
has filed in the United States land office an application for a
patent to the same.   Here it stops.   There is no allegation
that the claim or application of the defendant for a patent is
without right, or invalid, or void, or that the plaintiffs ever
filed any adverse claim to the defendant's application for
patent.   It does not appear from the complaint that any contest was initiated or was pending in the land office at the date

of the commencement of this action. The only fact upon which the plaintiffs could base any claim to any standing in court is not averred. If the plaintiffs were to prove all that was alleged in their complaint and rest, they would surely be nonsuited. Their pleading is just as defective as their proofs would be in the supposed case. The material and indispensable averment—*the pendency of a contest*—is omitted. (*Golden Fleece Co.* v. *Cable Con. Co.*, 12 Nev. 320.) The finding on the issue of possession in favor of the defendant is equally fatal to the plaintiffs' right to maintain this suit under section 1674. Although upon the face of the statute the remedy given is not confined to a party in possession, yet under fundamental rules of interpretation, founded upon the well-settled policy of the law, we think the statute should be so construed. "Possession is nine points of the law." The adverse claimant who holds the other point must show it or give up the game. There are no presumptions in his favor. Conversely, it was settled at common law that a party could not maintain such a bill, even on strict legal title, as against a party in possession. He had to get into possession by force of law. (*Hipp* v. *Babin*, 19 How. 276; *Welby* v. *Duke of Rutland*, 6 Bro. P. Cas. 575; *Foley* v. *Hill*, 1 Phil. 399; *Foley* v. *Hill*, 2 House of Lords Cas. 28.) It is still the law of Nevada that a party invoking this remedy in respect to any other than mining property must show possession. If the change has been made in the single instance of mineral lands, it is not easy to perceive any adequate motive to induce the change. The same logic and reason would not support section 256 and section 1674. To hold that section 1674 allows suit to be maintained by a plaintiff out of possession against a defendant in possession, is to set aside the fundamental rule of legal policy, that legal actions must be brought on legal titles. (*Phelps* v. *Harris*, 101 U. S. 375; *Phelps* v. *Harris*, 51 Miss. 789; *Banks* v. *Evans*, 10 S. & M. 35; *Huntington* v. *Allen*, 44 Miss. 662; *Barrett* v. *Holmes*, 102 U. S. 657.)

III. We understand it to be admitted on all sides that this is a suit in equity; that the relief sought is equitable in its nature, and that the judgment entered is of that nature.

Although the relief granted on a bill of peace or a complaint to quiet title is equitable in its nature, yet the plaintiffs' right to relief rests upon legal title. Not strict legal title in fee, but a *quasi*-legal title, on which a recovery in ejectment might be supported, like the possessory title based upon the location of a mining claim. Neither a bill of peace nor a complaint to quiet title will authorize or support a judgment declaring and enforcing a trust. (*Burton* v. *Leroy*, 5 Saw. U. S. C. C. 521; *Killey* v. *Wilson*, 33 Cal. 691.) It follows that the plaintiffs' title being *quasi*-legal in its nature, and the defendant being in possession, the plaintiff had its remedy in ejectment. In such an action by the common law and the constitution, the defendant would have an absolute right to a jury. According to the constitution of courts of equity the facts are found and the law is decided by a single judge. He may call a jury, but their verdict is merely advisory. Judgment does not follow upon such a verdict. It must first be approved by the court. The course of procedure is reversed. Instead of the presumption being in favor of its justice and correctness, and the losing party having to show the error, the burden of proof would still rest upon the party holding the affirmative of the issues, although all had been found in his favor. (*Feusier* v. *Sneath*, 3 Nev. 120; *Van Vleet* v. *Olin*, 4 Nev. 285; *Lake* v. *Tolles*, 8 Nev. 125.) The precise question for which we contend has only arisen in two cases in the United States—in Michigan and Pennsylvania, before courts of the highest character and reputation, and in each case it was decided against the constitutionality of the statute. (*N. Penn. Coal Co.* v. *Snowden*, 42 Penn. St. 488; *Tabor* v. *Cook*, 15 Mich. 322.)

IV. If at any time the plaintiffs had a title sufficient to recover upon, that title ceased and determined when the defendant's patents were issued. (1 Comp. L. 258; *O'Connor* v. *Blake*, 29 Cal. 317; *Moss* v. *Shear*, 30 Cal. 475.)

V. The defendant's patents are conclusive evidence of its right of possession. (*Green* v. *Liter*, 8 Cranch 229; *Barr* v. *Gratz*, 4 Wheat. 213; *Propagation Society* v. *Paulet*, 4 Pet. 484; *Clarke* v. *Courtney*, 5 Pet. 345; *U. S.* v. *Arredoucher*, 6 Pet. 743.)

VI. The St. George patent is only voidable, not void. To set it aside a direct proceeding in the name of the United States is necessary. Unless a patent is void on its face absolutely, or its issuance was without authority, or was prohibited by statute, it cannot be avoided except in a regular course of pleading, in which fraud, irregularity or mistake are directly put in issue. (*Jackson* v. *Lawton*, 10 Johns. 22; 12 Am. Dec. 564; *United States* v. *Chapman*, 5 Saw. 528; 39 Mich. 233; 43 Mich. 433; *Bledsoe's dev's* v. *Wells*, 4 Bibb, Ky., 329; *Marshall* v. *McDaniel*, 12 Bush, Ky., 378.) A person who has complied with all the requisites to entitle him to a patent to a particular lot is deemed the equitable owner. (*Wirth* v. *Branson*, 98 U. S. 121; *Lytle* v. *State*, 9 How. 314; *Stark* v. *Starrs*, 6 Wall. 402; *Frisbee* v. *Whitney*, 9 Wall. 187; *Yosemite Valley Case*, 15 Wall. 77; *Railway Co.* v. *McShane*, 22 Wall. 444; *Shipley* v. *Cowan*, 91 U. S. 330.) If a party has complied with all the requirements of law entitling him to a patent, and through a misconstruction of the law by the land officers another receives the patent, a court of equity, in a proceeding for that purpose, upon proper allegations, will decree the holder of the patent to convey to the party having the better right. (*Johnson* v. *Towsley*, 13 Wall. 72; *Sampson* v. *Smiley*, 13 Wall. 91; *Warren* v. *Van Brunt*, 19 Wall 646; *Shipley* v. *Cowan*, 91 U. S. 330; *Moore* v. *Robbins*, 96 U. S. 530.)

VII. No protest such as the law requires was filed by the owners of the Uncle Sam, and no suit was commenced within the time required by law; hence, the respondent was entitled to a patent to the St. George, and its issuance was regular, and the courts have no jurisdiction to inquire into the priority of right of the appellants for any purpose.

VIII. When there has once been a valid grant of public land by the government, whether by patent or otherwise, there cannot be a second valid grant of the same land. But if the first grant is invalid or void the second grant may be a good and valid grant. Therefore if the position of counsel for appellants be correct, that the St. George patent is absolutely void and not voidable, simply then the Victoria patent issued without protest is a good and valid patent.

ROSE v. RICHMOND M. CO.

IX. But counsel for appellants contend that the land was reserved from sale at the time the Victoria patent was issued. To this position there are these all-sufficient answers: First, the St. George patent had been issued long before the Victoria patent was issued, and if the land had been reserved from sale during the pendency of the St. George application, that reservation ceased when the patent issued; second, the stay of proceedings under the law was only a stay of proceedings under the St. George application. The officers were at liberty under any application to issue a patent to the lode. If the appellants had shown the boundaries and extent of their claim in their protest as required by law, under the regulations of the land department, the Victoria application would not have been permitted. Appellants filed what they claim is a protest covering surface ground two hundred feet in width and eight hundred feet in length, instead of one thousand feet in width, and they now claim that they are the owners of the whole lode one thousand feet wide on the surface by virtue of the Uncle Sam claim two hundred feet wide. Thus, by virtue of their protest against the St. George application, suit thereunder and a recovery therein, if it had been tried before patent issued, they would have been entitled under the law to file the judgment roll and take the other steps necessary, and to demand and receive a patent, by which they would acquire a title to the entire lode one thousand feet on the surface by paying for two hundred feet in width. This would have been a palpable fraud upon the government, and could only have been carried through by misrepresentation.

X. Respondent applied for a patent to the St. George mining claim, including the ground in dispute. Appellants filed a so-called protest against the application and commenced this action. Appellants claim that while this contest was still pending and undetermined, a patent was issued to the respondent. If the contest was still pending when the patent issued, as appellants claim, their only remedy is by bill in the name of the United States to annul the patent. (*United States* v. *Chapman*, 5 Saw. 528; *U. S.* v. *Schurz*, 102 U. S. 378.)

*Stewart & Herrin* and *W. S. Wood*, for Appellants, in reply

review at length the various points discussed by respondent's counsel.

By the Court, HAWLEY, J.:

This action was brought by appellants to determine the right of possession to certain mining ground.

The cause was tried before the court without a jury. A judgment was rendered in favor of respondent. No motion for a new trial was made. The appeal is taken from the judgment.

Appellants claim that upon the facts found by the court the judgment should have been in their favor.

The following diagram shows the relative positions of the Tip Top, St. George and Victoria locations, relied upon by respondent, and of the Uncle Sam location, upon which appellants rely :

Exhibit B

From the findings of the court it appears that the mining ground in controversy is situated on Ruby Hill, in the Eureka Mining District; "that along and through the hill for a distance slightly exceeding a mile, and extending in a north-westerly and southeasterly direction, is a zone of limestone, in which at different places throughout its length mineral is found;" that underlying this zone on the southerly side is a well-defined, unbroken foot-wall of quartzite which has a general dip to the northeast; that on the northerly side of this zone of limestone is a hanging-wall of shale, and that this zone of limestone is a vein or lode of rock in place, bearing gold, silver, lead and other valuable minerals.

That the Uncle Sam mining claim was located upon this zone of limestone on the 14th day of January, A. D. 1872, by E. H. Rose and two other persons; that they included in said location eight hundred linear feet of said zone, two hundred linear feet having been located for a discovery claim; that they recorded the notice of location in due time, and marked the boundaries of the claim before the St. George was located; that several years prior to the location of the Uncle Sam claim said zone had been discovered and a large number of mining claims located upon it; that Rose knew of the existence of said locations, and that work was being prosecuted thereon; that at the time of the location of the Uncle Sam, and for a long time prior and subsequent thereto, it had been the custom and usage of the larger portion of the miners upon this zone or lode to include in their locations two hundred feet for a discovery claim; that it was not known or believed at the time of the location of the Uncle Sam that the belt or zone of limestone running through Ruby Hill constituted but one zone or lode; that the locators of the Uncle Sam believed there was no other valid existing location upon the ground included within the surface boundaries of their location; that a mining claim called the Phillips was located on the 23d day of September, A. D. 1871, by Phillips and others upon the identical ground afterwards located by the Uncle Sam; that the Phillips claim and location was abandoned prior to the location of the Uncle Sam; that Rose, prior to the location of the Phillips, had discovered the ore within the limits of the Uncle Sam location.

"That Rose and his associates made the Uncle Sam location in good faith and in accordance with the customs and usages of the majority of the miners in said mining district, and they and their grantees have ever since remained in the actual possession of said Uncle Sam location as located, to the extent of annually sinking a shaft thereon, maintaining and at times occupying a cabin thereon, and  * * *  excavating drifts and tunnels thereon,  * * *; that Rose and his co-locators did the amount of work required to hold said mining claim under the laws of the United States, and their successors in interest continued to do the necessary work to hold said claim after succeeding to the interest of Rose and his co-locators up to the time of this trial;" that none of said work was done within the surface limits of the St. George, but was done within the surface lines of the Uncle Sam location.

That the St. George claim was located on the 20th day of March, 1873, subsequent to the location of the Uncle Sam; "that from and after the date of the location and discovery of the St. George mining claim and lode herein,  * * * the Richmond Mining Company of Nevada has been actually in possession of the said lode, as in the said patent described, and has been engaged in mining and extracting the precious metals therefrom, and  * * * in sinking winzes and running drifts, tunnels and levels at a great depth below the surface of the earth, and none of the excavations made by either party came in conflict with any of those made by the other."

That respondent, on the 1st day of August, 1873, made an application, through the local United States land office at Eureka, for a patent to the St. George mining claim; that on the 29th day of September, 1873, and within the period allowed by law for publication of notice, Rose and his associates filed a protest in said land office, which showed the boundaries and extent of their claim, against said application; that on the 21st day of October, 1873, they filed the complaint in this action in the office of the clerk of the district court of Eureka county; that at that time they did not pay the docket fee required by the statute of this State (2 Comp. L. 2766); that the docket fee was advanced and paid by the clerk to the

county treasurer, in his regular monthly settlement, on the 3d day of November; that respondent regularly appeared in said action and filed a demurrer and answer; that it did not at any time move to dismiss said action or file a plea in abatement therein.

That after said cause was at issue it was regularly placed upon the calendar for trial; that thereafter it remained on the calendar until the March term, 1874, but was not tried, for the reason that negotiations were pending for a settlement of the matters in controversy; that at the March term, 1874, the cause was continued upon motion of counsel for respondent, and thereafter the cause was not placed upon the calendar, nor any proceedings had, until the March term, 1880; that negotiations for a settlement were still pending, and Rose and his associates were led to believe from representations made to them by the officers and agents of the Richmond Mining Company that it would abandon all claim to that portion of the Uncle Sam west of the west end line of the Tip Top claim, or that it would purchase the Uncle Sam claim, and it was owing to these facts that the prosecution of the suit was delayed; that in the month of September, A. D. 1876, the Richmond Mining Company made application to the land office at Eureka for final entry and payment for the St. George claim, and presented a certificate of the clerk of the district court to the effect that this action had not been placed upon the calendar, nor had any proceedings been had therein, after the March term, 1874; that the officers of the land department, upon this certificate, decided that this action had not been prosecuted with due diligence, and for this reason that the Richmond company was entitled to a patent; that these proceedings were had without notice to plaintiffs and at a time when they and their attorneys believed from the representations made by the officers and agents of the Richmond company, as before stated, that a settlement would be agreed upon, and that there was no necessity for a trial; that the ruling of the officers of the land office at Eureka was approved by the commissioner of the general land office at Washington, D. C.; that plaintiffs were notified of his decision, and informed that they would have sixty days within which to appeal from the

decision of the Secretary of the Interior; that they did not take any steps in the matter and did not appeal from the decision; that, thereafter, on the 7th day of May, 1877, the government of the United States issued a patent to the St. George claim and lode to the respondent.

That on the 30th day of April, 1874, the government of the United States issued to the respondent a patent to the Tip Top claim and lode.

That on the 18th day of October, 1878, the respondent made an application for a patent to the Victoria claim, which had been located subsequent to the location of the Uncle Sam, and procured a patent therefor from the United States on the 28th day of February, 1880; that no protest was filed against said application by the owners of the Uncle Sam claim.

That the Tip Top, St. George, Victoria and the Uncle Sam claim are each upon the same vein or lode.

That at the time of the trial of this action the Albion Consolidated Mining Company was the owner of the Uncle Sam claim, and this action is prosecuted for its benefit by the consent of the plaintiffs.

All that portion of the mining ground, within the limits of the Uncle Sam location, on the easterly side of the line "A" "C" on the diagram belongs to the respondent by virtue of the Tip Top location and patent.

We have been thus particular in stating the facts, in order that some of the questions which we will have occasion to discuss may be the more clearly comprehended.

The real controversy, upon this appeal involves the validity of the Uncle Sam location, owned by appellants, and of the St. George and Victoria locations and patents owned by respondent. There are, however, numerous preliminary questions to be first disposed of. The case upon every point fairly bristles with legal and technical objections, urged by respondent. If any of the objections are well taken the judgment should be affirmed. If none of them are tenable the judgment must be reversed.

The various questions presented have been elaborately argued with marked ability.

From the interest thus manifested, as well as the importance of some of the questions involved, and the peculiar facts of the case, we deem it to be our duty to decide all the points that have been made; but in so doing we shall not attempt to answer all the reasons advanced by counsel. It is enough to state our opinion upon the points discussed and to give the reason for our decision thereon.

1. It is claimed by respondent that the statement on appeal is defective because it does not contain any evidence, or specify any error which occurred at the trial. This objection is without merit. No question is raised by appellants as to the sufficiency of the evidence to support the findings of facts. They do not rely upon any alleged error committed by the court during the progress of the trial. The statement does contain some, if not all, of the documentary evidence, and it was unnecessary to insert any more of the evidence taken at the trial in order " to explain the particular errors or grounds specified " in the statement on appeal.

The statement is sufficient to authorize this court to determine whether the findings of facts support the judgment of the district court, provided there is a proper specification of errors as required by section 332 of the civil practice act. (1 Comp. L. 1393.)

2. We are of the opinion that this provision of the statute has been substantially complied with. It is true, as claimed by respondent, that in the assignment of errors it is not said, in direct terms, "that the judgment is contrary to the findings; or that upon the findings the judgment should have been for appellants;" yet such is the evident meaning and effect of the language used.

We believe it has been the usual practice, in cases like this, to make the general statement that the judgment is not supported by the findings, and to add a specific statement of " the particular errors" relied upon. But the general statement, the absence of which it is claimed is fatal without the particular specifications, would, according to many of the authorities cited by respondent, be insufficient.

It must be remembered that no objections are urged as to the sufficiency of the findings. They are not complained of by

either party, but are accepted as correct by both, and must be so treated by this court. The only grounds, therefore, that could have been assigned as error were the alleged erroneous conclusions of law reached by the court upon the undisputed facts set forth in the findings.

Every conclusion of law of which complaint is made is separately specified as an error upon the part of the court. The form of the specifications may be subject to criticism, but the substance is there. Appellants have pointed out with great distinctness the specific errors which they claim the court committed, in its conclusions of law, in such a manner as to enable this court to readily understand the grounds upon which they rely for a reversal.

The specifications are given "with such fullness as to aid the court in the examination of the transcript," and this court is not left, as was the court in *Squires* v. *Foreman*, 10 Cal. 298, and other cases cited by respondent, "to grope its way through the record in search of possible errors."

The statement on appeal and the assignment of errors come within the rule announced by the decisions in *Barrett* v. *Tewksbury*, 15 Cal. 356, and *Hutton* v. *Reed*, 25 Cal. 478, and this court has never, in any of its decisions, suggested that any further specification was necessary.

3. Respondent contends that the complaint does not state facts sufficient to constitute a cause of action. In deciding this question it is important to determine the nature of this action, for upon the character of the pleadings, especially of the complaint, depends the solution of many questions that have been elaborately and learnedly argued by counsel.

The complaint alleges "that the plaintiffs are, and ever since the 20th day of January, A. D. 1872, have been the owners of, seized and possessed of," the mining ground in controversy, "together with all the veins, lodes and ledges throughout their entire depth, the top or apex of which lies within said surface boundaries; that defendant, unjustly and adversely to plaintiffs, claims an estate in fee in and to said premises, and the right of possession thereof, and the right of extracting and converting to its own use all the mineral-bearing rock, ore and earth therein contained, and has filed in the

United States land office an application for a patent thereto, under the name of the St. George ledge and mine," and closes with the usual prayer.

We will not follow counsel in that portion of their argument which is based upon the theory that this is a suit brought under the provisions of section 256 of the civil practice act. In our opinion the sufficiency of the complaint must be determined by the provisions of section 1674 of the compiled laws (Stat. 1873, 50), and section 39 of the civil practice act.

Section 1674 reads as follows :

" In all actions brought to determine the right of possession of a mining claim, or metalliferous vein or lode, where an application has been made to the proper officers of the government of the United States, by either of the parties to such action, for a patent for said mining claim, vein or lode, it shall only be necessary to confer jurisdiction on the court to try said action, and render a proper judgment therein, that it appear that an application for a patent for such mining claim, vein or lode, has been made, and that the parties to said action are claiming such mining claim, vein or lode, or some part thereof, or the right of possession thereof."

The objections to the complaint, under section 1674, are stated as follows : " There is no allegation that the claim or application of the defendant for a patent is without right, or invalid or void, or that the plaintiffs ever filed any adverse claim to the defendant's application for a patent. It does not appear from the complaint that any contest ever was initiated or was pending in the land office at the date of the commencement of this action."

The complaint is not defective, either under section 256 or section 1674, because it does not allege the particulars of defendant's claim and prove that it was invalid. (*Scorpion S. M. Co.* v. *Marsano*, 10 Nev., 379; *Golden Fleece· G. and S. M. Co.* v. *Cable Con. G. and S. M. Co.*, 12 Nev. 320.)

In the case last cited, Beatty, J., in delivering the opinion of the court, said : " A review of the question is, however, wholly unnecessary in this case, which is governed by the provisions of section 1674 of the compiled laws, * * * and evidently designed to supplement section 2326 of the revised

statutes of the United States.   *   *   *   Under these laws
the pendency of a contest in the land office, with respect to a
mining claim, gives our district courts jurisdiction to deter-
mine the right of possession as between the adverse claimants.
The contestant, whether he is in or out of possession, must
commence his action to determine the right within thirty days
after filing his adverse claim.    It would be absurd to hold
that, if he happens to be the party in posssesion, and there-
fore presumably entitled to the possession, judgment must go
against him, in favor of a party out of possession, unless he
not only proves his own right affirmatively, but disproves the
claim of the defendant by negative testimony.    The only sen-
sible construction of the law is that each party must prove his
claim to the premises in dispute, and that the better claim
must prevail."

It is claimed that this decision is in favor of the respondent,
upon the point that the pendency of the contest in the land
office must be alleged.    The complaint in that action averred
that plaintiff had filed an adverse claim to the defendant's
application for a patent, hence the statement in the opinion
that the pendency of the contest in the land office gave the
court jurisdiction, which is true; but the question here involved
was not presented in that case, and the court did not decide
that such an allegation was absolutely essential in order to
give the court judisdiction.

Section 1674 does not make the filing of the protest a juris-
dictional fact to be alleged in the complaint, and in this respect
it differs from the statute considered by the court in *Berry* v.
*Camet*, 44 Cal. 352, which is also relied upon by respondent.

It has, we believe, been the general practice in this state,
in suits of this character, to allege the pendency of the contest
in the land office, and the act of congress (Rev. Stat. 2326)
has reference to cases where an adverse claim is filed.    But it
does not attempt to confer any special jurisdiction upon the
state courts.

In *420 M. Co.* v. *Bullion M. Co.*, 9 Nev. 248, we said:
" Congress did not, by the passage of this act,   *   *   *
confer any additional jurisdiction upon the state courts.    The
object of the law, as we understand it, was to require parties

protesting against the issuance of a patent to go into the state courts of competent jurisdiction and institute such proceedings as they might, under the different forms of action therein allowed, elect, and there try ' the rights of possession ' to such claim and have the question determined. The acts of congress do not attempt to confer any jurisdiction not already possessed by the state courts, nor to prescribe a different form of action. * * * We are of opinion that when the action is brought, whatever may be its character, it must be tried by the same rules, governed by the same principles and controlled by the same statutes that apply to such actions in our state courts, irrespective of the acts of congress."

Section 1674 was evidently passed to supplement the act of congress, as stated in the Golden Fleece case, and it designates the jurisdictional facts that are necessary to be alleged in the complaint. The complaint in this action substantially conforms to the language of the statute, and we are of opinion that, tested by the statute and the previous decisions of this court, it states facts sufficient to constitute a cause of action to determine the right of possession to the mining ground in controversy.

4. The claim of respondent that this action was not commenced in time is not well taken.

The complaint was filed within thirty days after the filing of the protest as required by the statute.

It is true that the plaintiffs did not pay the docket fee (2 Comp. L. 2766–7), but it was advanced and paid by the clerk in his next regular monthly settlement with the county treasurer. The findings are silent as to whether any summons was issued or not. They show, however, that the defendant regularly appeared and filed a demurrer and answer to plaintiffs' complaint, and did not at any time move to dismiss the action or file a plea in abatement. From these facts it is apparent that it cannot now be claimed that the action was not commenced in time.

The defendant, by demurring and answering, waived the issuance of summons. (1 Comp. L. 1085; *Iowa M. Co.* v. *Bonanza M. Co.* 16 Nev. 64.)

Respondent cannot take advantage of the fact that the clerk instead of the plaintiffs paid the docket fee.

The clerk had the right to refuse to put the case upon the docket unless the docket fee was paid by the plaintiffs. By entering it upon the docket he became personally responsible, and assumed the payment of the fee, and, having paid it, as he did, the rights of plaintiffs were preserved. The case stands precisely the same as if the summons had been issued, and the docket fee paid by plaintiffs on the day the complaint was filed.

5. The claim of respondent that the protest does not show "the nature, boundaries and extent" of the Uncle Sam location and lode is untenable.

This objection is one that should, if relied upon, have been made in the land office when the protest was filed. It is questionable whether any objection could be urged against the protest after the commencement of the suit, especially in a case where no plea has been interposed to its sufficiency. But it is apparent that the protest does sufficiently show "the nature, boundaries and extent" of the Uncle Sam claim and lode.

The respondent, in its application for a patent to the St. George location and lode, claimed two hundred and fifteen feet in width upon the surface. The Uncle Sam location claimed two hundred feet in width upon the surface.

The protest avers "that the so-called St. George lode or vein, wherefor a patent is applied, is identical with the Uncle Sam vein and lode," and refers to the diagram to show "the nature and extent of the conflict." The protest, in its description of the "nature, boundaries and extent" of the Uncle Sam location and lode, is as clear, definite and specific as was the application presented by respondent for a patent to the St. George. If the protest is defective, so is the application. It would be absurd, in the first instance, to decide that the application was sufficient when it only claimed two hundred and fifteen feet in width on the surface; and then, in the next breath, declare that the protest was insufficient because it did not claim the entire width of the lode on the surface.

It is a conceded proposition that there is but one lode within the limits of the respective locations. It therefore necessarily follows, notwithstanding the fact that each party only claimed two hundred feet in width on the surface, that which ever

party has the better right to the possession of the lode will be entitled to its entire width and entire depth, although it may, in its downward course so far depart from a perpendicular as to extend outside the vertical side lines of the surface location.

6. It is strenuously insisted that appellants cannot maintain this action because, as respondent argues, the court found as a fact that it was in the actual possession of the mining ground in controversy at the time the action was commenced. This argument is principally based upon the ground that this action must be governed by the provisions of section 256 of the civil practice act. But it is also claimed that the same rule must prevail under the provisions of section 1674, notwithstanding the fact that it does not confine the rights of plaintiffs, as does section 256, to a party in possession.

We do not think the argument of respondent could be sustained even if the facts were, as it claims them to be, that it was the only party in the possession of the mining ground in controversy. (*Golden Fleece* v. *Cable Con. Co.*, 12 Nev. 321.)

The facts, however, show that both parties were in possession of different portions of the "big lode," and the character of their possession is particularly defined.

Under the statute the party having the better right to the possession of the *lode* must prevail, and is entitled to maintain this action.

It being admitted, as we have before stated and will have occasion again to repeat, that there is but one lode, and that the Uncle Sam location, upon this lode, is prior in point of time to the St. George, it must follow that if the location of the Uncle Sam was valid in its inception, and its owners have not waived, lost or abandoned their rights, but have at all times complied with all the requirements of the law, appellants were and are the only parties legally in possession of the lode in controversy, and that respondent is not entitled to the "nine points of law" that are claimed for it and that often follow from the actual possession of property.

This must be true. If at the time the St. George location was made there was a prior, existing and valid location upon this portion of the lode, and such location has ever since been legally maintained, then the subsequent location of the St.

George upon this portion of the lode was absolutely null and void, and respondent did not, and could not, acquire any rights whatever by virtue of its location upon, or its possession of, this portion of the lode. A party cannot locate a valid claim to a mining claim or lode already located and legally possessed by others.

In *Belk* v. *Meagher*, recently decided by the supreme court of the United States, Waite, C. J., in delivering the opinion of the court, said : " Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by congress, but it can only be exercised within the limits prescribed by the grant. Locations can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence, a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator but all the world, because the law allows no such thing to be done.  *  *  *  The right to possession comes only from a valid location. Consequently, if there is no location there can be no possession under it. Location does not necessarily follow from possession, but possession from location."

7. Is the Uncle Sam location invalid ?

It is claimed by respondent that the locators of the Uncle Sam, by claiming a discovery interest, committed a fraud upon the government, and that, by reason thereof, their entire claim is illegal and void. The act of congress under which this location was made provides " that no location hereafter made shall exceed two hundred feet in length along the vein for each locator, with an additional claim for discovery to the discoverer of the lode." (14 U. S. Stat. 252, sec. 4.)

Appellants contend that the term "discovery," as used in this act, is susceptible of more than one construction, and that the courts are justified in defining its meaning to be " a discovery

made within the limits of the claim located." We are of opinion that a broad and liberal interpretation should be given to this statute. It must be construed with reference to the intent and object that congress had in view at the time of its passage, and in determining this question it is proper to consider the condition of the country and the general character of the mineral deposits, veins and lodes.

The object was evidently to encourage the location and development of mining claims. It was intended that the adventurous and enterprising prospector, who explored the mineral regions in search of the hidden treasure, should be rewarded by the government with at least " an additional claim for discovery." The mineral lodes, in many mining districts, were concealed from public view. They did not always " crop out" upon the surface of the earth. There were no landmarks to definitely determine the length, width, distance or course of the lode when discovered. It required much time, money and labor, and in many cases protracted and expensive litigation to settle these disputed questions.

The facts of this case present a fair history of the condition of many of the mining districts in this state, and eliminate from the case every question as to any intended fraud upon the government. They show that Rose was the first discoverer of the ore body at the point of his location, and that he and his associates made the location in good faith, honestly believing that the location was not upon any lode that had been previously discovered by others. Subsequent developments established the fact that they were mistaken, and the owners of the Uncle Sam have been legally deprived of all that portion of their location on the easterly side of the line A C, within the boundaries of the Tip Top claim, and it also appears from the diagram that over two hundred feet of the Uncle Sam location, on the westerly end, extends beyond the limestone shale into the country rock. The fact that Philips made a prior location to the same ground is not entitled to any consideration, because this location was abandoned prior to the location of the Uncle Sam.

In illustration of the evil results that would flow from sustaining respondent's construction of the law, let us suppose

that A, in 1870, located a mining claim, on the easterly end of Ruby Hill, including two hundred feet for a discovery interest; that B, two months thereafter, went to the westerly end, a distance of over one mile, and made a location upon a body of ore, and, believing it to be upon an entirely distinct lode from the one upon which A had made his location, claimed two hundred feet for discovery; that for years afterwards numerous other parties came upon the hill and made divers other locations between the claims of A and B, each claiming two hundred feet for discovery, and for ten, or more years the various claims thus located were worked and developed upon the theory and belief that each was upon a separate and distinct vein or lode; and, after this lapse of time, the expenditure of several hundred thousand dollars, and long protracted and expensive litigation, it was ascertained, as it finally was on Ruby Hill (*Eureka Consolidated Mining Company* v. *Richmond Mining Company of Nevada*, 4 Saw. 302), that there was but one lode, a zone of limestone containing precious metals, varying in width from five hundred to fifteen hundred feet. The courts would have to say to B, and all the subsequent locators who made locations on this great mineral zone—although their claims did not in any manner conflict with any previous locations made upon the lode—that their locations were absolutely void because the developments, brought about by time, labor, money and litigation, had established the fact that they were all upon the same lode originally discovered and located by A. To so declare would not only make invalid most of the early locations on Ruby Hill, but would, in its effect, entirely upset and destroy, in many cases, the titles to mining property in the various mineral districts of this and other states and territories. Nevertheless, if the law so directs, in plain and unequivocal terms, it is the bounden duty of the courts to follow its mandates, although by so doing it would result in great and manifold injustice. The responsibility would rest upon congress, not upon the courts. But we are of opinion that such is not the meaning, object or intent of the law, and that such a construction is not warranted either by the letter or spirit of the statute. The most that could possibly be claimed against the

validity of the Uncle Sam location would be that it was voidable to the extent of the excess of two hundred feet, and the owners of the claim could determine from which end, or ends, this excess should be taken.     Nothing more than this result would follow from the reasoning of Beatty, J., in the *Golden Fleece* v. *Cable Con.*, *supra*, where an alien joins in making a location; or, from the views expressed by the Supreme Court of Idaho, in *Atkins* v. *Hendree*, where it was claimed that the locators had purposely included a greater number of feet than the law allowed, and the court said that " all the benefit that a subsequent locator can claim is that he shall be entitled to maintain his right to the excess." (1 Idaho 112.)

There is not any principle decided, or reason given, in either of these decisions inconsistent with the construction contended for by appellants that the statute intended to give two hundred feet to the discoverer of the lode within the limits of his claim, and we are not prepared to say that such a construction is not warranted by the language of the statute.     But, under the facts of this case, it is only necessary to decide that the Uncle Sam location is not entirely void; that, if voidable at all, it is only as to the excess of the discovery interest.

8. Is the St. George patent void ?

The provisions of the act of congress, to which we have already referred and upon which this and other questions, to be hereinafter discussed, must be determined, read as follows : " Where an adverse claim is filed during the period of publication, it shall be upon oath of the person, or persons, making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice, and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived.     It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure to do so shall be a waiver of his adverse claim.     After such judgment shall have been rendered, the party entitled to the possession

of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment roll with the register of the land office, together with the certificate of the surveyor general that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the receiver five dollars per acre for his claim, together with the proper fees, whereupon the whole proceedings and the judgment roll shall be certified by the register to the commissioner of the general land office, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess." (Rev. Stat. U. S., sec. 2326.)

The language of this statute is clear, plain and explicit.

When a patent is issued in pursuance of its provisions it would furnish the highest and best evidence of title which a party could obtain. In such a case, as was said by Field, J., in the Eureka case (4 Saw. 319), "a patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency it is ironclad against all mere speculative inferences." But it is equally as clear, and as well settled, that, if the statute has not been complied with, and a patent is issued without authority of law, no substantial title is acquired.

The position taken by respondent that the officers of the land department of the government had jurisdiction to declare the adverse claim of appellants waived, by a failure on their part to prosecute this suit with reasonable diligence, cannot be sustained.

When this suit was commenced the district court acquired jurisdiction to try every question involved in the case, including the question of diligence in its prosecution. Congress did not intend that the land department should take any action until the controversy was finally determined in the state courts. The department is not authorized to interfere with the proceedings in the courts. The statute declares the steps that must be taken, and by following its directions no conflict of authority can ever arise between the land department and the

courts.   By departing from them endless confusion and expensive and unnecessary litigation will be bound to follow.

Secretary of the Interior Schurz, in overruling the decision of the commissioner of the land office in the *Iowa Mining Company* v. *Bonanza Mining Company*, gave a clear exposition of the act of congress.   He said: "This statute provides in plain terms that a failure on the part of an adverse claim-ant to prosecute his suit to judgment with reasonable diligence shall be a waiver of his claim, but it does not provide, either in terms or by necessary implication, that you shall decide what constitutes reasonable diligence while suit is pending in court.   There can be no question but what the state court of Nevada has acquired jurisdiction over this cause, and it is equally clear that the object of the law was to require parties claiming an adverse interest in land included in an application for patent to try the right of possession and have the controversy determined by the state courts before a patent was issued.   'Where a court has jurisdiction, it has a right to decide every question which occurs in the cause.' (*Elliott* v. *Piersal*, 1 Pet. 340.)   The question of diligence in the prosecution of a pending suit is as much a question for the determination of the court as any other question of law or fact which may arise in the progress of the case, and one which, after the court has acquired jurisdiction, should be left for its determination.   I do not think it was the intention of congress that you should decide what constitutes reasonable diligence in the prosecution of a suit pending in a court of competent jurisdiction, for such a proceeding would necessarily interfere with matters which the court alone should determine.   Under such a practice it might occur in which you would hold that reasonable diligence had not been exercised, and issue a patent, while the court might hold otherwise and give judgment for the adverse claimant, and the result would be a conflict of authority and a confusion of titles.   *   *   *   I am of opinion that the proper practice in cases of this character is for the defendant, if in his opinion the suit is not prosecuted with reasonable diligence, to move the court to dismiss the case for want of prosecution, and if the motion is granted, cause the judgment to be certified to your office, when a patent can

be issued without conflict with the jurisdiction of the courts, or the rights of the parties in interest." (Sickel's Mining Laws, 290; Copp's Mineral Lands, 219.)

Equally plain and explicit is the opinion of Secretary Chandler, in *City Rock* v. *King of the West*. "The plain meaning of this section is that all contests which may arise in the disposal of the mineral lands shall be tried and determined, if tried at all, in a court of competent jurisdiction; that the adjudication and determination of that court shall be final, and a patent for the tract in controversy shall issue to the successful party or parties, upon showing further compliance therewith." After stating the objections raised by the protest he adds: "Both of these objections go to the merits of the case, and not to the form of the claim. It is unquestionably your duty, as well as mine, when an adverse claim is presented for consideration, to examine it and determine whether the claimant has substantially set forth, under oath, its ' nature, boundaries and extent;' but if a compliance with the law is shown in these particulars, and a suit has been instituted to determine the rights of the parties, I am of the opinion that we can proceed no further with the investigation. It is the duty of the court in which the suit is pending to determine all other questions relating to the controversy." (Sickel's Mining Laws, 296; Copp's Mineral Lands, 219.)

The facts of this case, as well as the decisions of the different secretaries of the interior, show the expediency, wisdom and propriety of congress making provision, as it did, to have this question, and all others arising in the action, to be settled and determined in the state courts. The certificate issued by the clerk "to the effect that this action had not been placed upon the calendar, nor had any proceedings been had therein from the March term, 1874," was true upon its face; but this fact, without showing the cause of the delay, conveyed to the officers of the land department an absolutely false impression, and induced them, in an *ex parte* proceeding, to decide that the plaintiffs had not prosecuted the suit with reasonable diligence; whereas the truth was, as established at the trial, that defendant was responsible for the delay in the prosecution of the suit.

The necessity of giving courts of justice final jurisdiction to review the action of the land department even in cases where its officers have jurisdiction to act, is very clearly and forcibly stated by the supreme court of the United States in *Johnson v. Towsley*, wherein it was decided that "the land office, dealing as it does with private rights of great value in a manner particularly liable to be imposed upon by fraud, false swearing and mistakes, exemplifies the value and necessity of this jurisdiction." (13 Wall. 72.) But in this case the officers of the land department had no jurisdiction to determine the question at issue. At the time the St. George patent was issued, there was a valid and pending contest in the court to determine the right of possession to the mining ground and lode in controversy, and the act of congress expressly declares that in such cases "all proceedings * * * shall be stayed until the controversy shall have been settled, or decided by a court of competent jurisdiction, or the adverse claim waived." The action of the land department was in violation of this provision of the statute. The government of the United States, under the circumstances, had no more authority than a mere stranger to issue the patent. Its officers had no jurisdiction to perform any act, and it could not legally issue a patent while a valid contest was pending in the state courts.

A patent issued without authority of law is void. (*U. S. v. Chapman*, 5 Saw. 528; *Polk's Lessees v. Wendal*, 9 Cranch 87; *Stoddard v. Chambers*, 2 How. 285; *Morton v. Nebraska*, 21 Wall. 660; *Sherman v. Bruick*, 93 U. S. 216.)

In *Polk's Lessees v. Wendal*, the facts showed that the state of North Carolina attempted to grant lands to which she had no title or authority to grant. The court declared the patent void. Marshall, C. J., in delivering the opinion, said : "There are cases in which a grant is absolutely void, as where the state has no title to the thing granted, or *where the officer had no authority to issue the grant*. In such cases the validity of the grant is necessarily examinable at law." (9 Cranch 99.)

In *Stoddard v. Chambers*, the facts showed that a patent had been issued at a time when the lands therein granted were expressly reserved from sale. McLean, J., in delivering the

opinion of the court, said :  "No title can be held valid
which has been acquired against law; and such is the charac-
ter of the defendant's title so far as it trenches on the plain-
tiff's.  *  *  *  The issuing of a patent is a ministerial act,
which must be performed according to law.  *  *  *  It is
true a patent possesses the highest verity.  It cannot be con-
tradicted or explained by parol, but if it has been fraudulently
obtained or issued against law, it is void.  It would be a most
dangerous principle to hold that a patent should carry the
legal title, though obtained fraudulently or against law.
*  *  *  The patent of the defendant having been for land
reserved from such appropriation, is void."  (2 How. 318.)

From the views already expressed it is apparent that the
district court was correct in its conclusions that the "St George
patent was issued without authority of law, while the land
embraced in the application was reserved from sale as effect-
ually as though there had been a special act of congress exclud-
ing it, and that, therefore, it is absolutely void."

9. Is the Victoria patent valid?  There is, as we have
before stated, but one lode within the boundaries of the Uncle
Sam, St. George and Victoria locations.  This lode was the
coveted prize for which these locations were made, and for
which the patents to the St. George and Victoria were issued.
The apex of this lode is within the surface ground claimed by
the Uncle Sam location, and throughout the argument it was
conceded that if the owners of this location have in all respects
complied with the law they will be entitled to the entire width
of the lode.  To repeat the facts :  When respondent made
its application for the St. George claim it included the iden-
tical lode which was afterwards embraced in its application
for a patent to the Victoria.  The owners of the Uncle Sam
claim protested against this application and brought an action
in the state court, within proper time, to determine which
party had the better right to the lode.  They did not protest
against the second application of respondent for a patent to
the same lode under the name of the Victoria.

Field, J. (in *Eureka Consolidated Mining Company* v.
*Richmond Mining Company of Nevada*) declared that under

the act of congress of 1872, "When one is seeking a patent for his mining location and gives proper notice of the fact as there prescribed, any other claimant of an unpatented location objecting to the patent of the claim, either on account of its extent or form, or because of asserted prior location, must come forward with his objections and present them, or he will afterwards be precluded from objecting to the issue of the patent. While, therefore, the general doctrine of relation applies to mining patents so as to cut off intervening claimants, if any there can be, deriving title from other sources, * * * the doctrine cannot be applied so as to cut off the rights of the earlier patentee, under a later location where no opposition to that location was made under the statute. The silence of the first locator is, under the statute, a waiver of his priority." (4 Saw. 318.)

These views are relied upon by respondent and claimed to be conclusive, in its favor, in support of the validity of the Victoria patent. But it will readily be seen, by an examination of that decision, that the question at issue here was not presented in that case, and the language of the eminent judge who delivered that opinion was not intended to, and does not, apply to a case like the present.

It seems to us that substantially the same reasons exist against the validity of the Victoria patent that exist against the St. George, and that if the court below was correct in declaring the St. George void, it necessarily follows by every method of sound reasoning known to the law, that it was wrong in the conclusion reached that the Victoria patent was valid.

At the time the Victoria patent was issued there was, as we have several times declared, a valid and pending contest between the respondent and appellants in the state court to determine the right of possession to the identical lode for which this—as well as the St. George—patent was issued. During the pendency of this contest the lode was reserved from sale.

In replying to the question asked by the surveyor general of Colorado, "Was the resurvey of the Crown Point lode, made after the filing of said adverse claim, and prior to the

final disposition of the said application by this office, legal ?" the commissioner of the general land office said : "I would state that after an application has been made for patent for a given mining claim such claim is virtually withdrawn from the market, pending the final disposition of the case." (Sick- els' Mining Decisions, 116.)

The application of J. B. Haggin for patent to the Hurricane lode was dismissed by the commissioner "upon the ground that a great portion of the land applied for was included in the pending application of Andre Chavaune, and hence at the date of Haggin's application the same was not in market." (Sickles' Mining Decisions, 243.)

If the portion of the lode in controversy was reserved from sale, then no patent could issue for it until this suit is settled and determined by the courts.

A party, after applying for a patent to a mineral lode under a given name, cannot, after a contest is raised in the courts, and while it is pending, make a second application, under another name, to the same lode, and, after obtaining a patent therefor, stand in the doorway of the "Temple of Justice" and say to the adverse claimant, who regularly appeared and protested against the first application, "You cannot enter these halls to defend your rights, because you did not protest against my second application."

If a party could legally make a second application for the same lode, he could continue without limit. As soon as one protest was filed, he could immediately make another applica- tion to the same lode under a different name, and require the adverse claimant to protest against each application and to bring a separate and distinct action in each case, and make the same proofs, in order to determine the identical questions at issue in the first suit. If this be the law, then a wealthy applicant could, in many cases, soon exhaust the purse, as well as the patience, of the adverse claimant, if he should unfortunately be limited in his means, however strongly he might be intrenched in the justice and right of his case.

We do not believe that the act of congress requires such vain, useless and expensive proceedings. It points out with unusual clearness the mode that each party must pursue, and

when the parties have once regularly brought themselves within its provisions their respective rights must be heard and determined in the manner therein designated.

Under the facts of this case no patent could be legally issued by the government of the United States to that portion of the lode in controversy, until the question as to which party has the better right to the possession of the lode is disposed of by the courts, and then the party having such better right is, by pursuing the provisions of the statute, entitled to the patent. If this portion of the lode is not reserved from sale until the contest is disposed of, then the provisions of the act of congress are a delusion and a snare :—

"That keep the word of promise to our ear and break it to our hope."

Numerous other reasons have been assigned by appellants against the validity of the Victoria patent, some of which only go to the extent of making it voidable instead of void ; but in our opinion the views we have expressed are correct, and they are conclusive of the case. It follows, therefrom, that the Victoria patent, in so far as it attempts to convey to respondent any portion of the lode covered by the valid portion of the Uncle Sam location, is—like the St. George—absolutely null and void.

10. In cases where a patent is issued without authority of law there is no necessity to resort to a court of equity to have it declared void. The question of its invalidity can be raised and determined in any proceeding either in law or equity. The authority of the court to declare the St. George and Victoria patents void, under the pleadings in this action, is too well settled to require discussion. (See authorities heretofore cited in discussing the invalidity of the St. George patent ; also *Patterson* v. *Tatum*, 3 Saw. 173; *Patterson* v. *Winn*, 11 Wheat. 380; *Cooper* v. *Roberts*, 6 McLean 93.)

11. The only remaining question is as to the form and character of the judgment which the district court should be directed to render in this case.

Appellants claim that they are entitled to a decree adjudging respondent to be the holder of the St. George and Victoria patents in trust for them and to an order requiring it to convey to them all rights acquired thereunder, and have cited

a great number of authorities which they claim warrant such a course to be pursued.

In *Johnson* v. *Towsley,* the supreme court of the United States said that if for any reason " recognized · by courts of equity as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience and by the laws which congress has made upon the subject, it ought to go to another, ' a court of equity will,' in the language of 'this court in the case of *Stark* v. *Starrs,* 6 Wall. 402, convert him into a trustee of the true owner, and compel him to convey the legal title." (13 Wall. 85.)

" The relief given in this class of cases," as was said by the court in *Silver* v. *Ladd,* " is founded on the theory that the title which has passed from the United States to the defendant, inured in equity to the benefit of plaintiff, and a court of chancery gives effect to this equity, according to its forms, in several ways." (7 Wall. 228.)

But this course is only pursued in cases where the officers of the government were authorized to act, and by an erroneous construction of the law, or a misapplication of the facts, issued the patent to the wrong party. This is not such a case. We have decided that both of these patents were absolutely void; that they were issued without authority of law at a time when the land and executive department of the government had no jurisdiction to act in the premises: The lode was reserved from sale; neither of the parties to this suit were entitled to a patent until the pending contest was finally settled and determined in the courts. If this be true, then the patents, in so far as they pretend to convey any portion of the lode within the limits of the Uncle Sam location, have no valid existence in the law. Respondent acquired no rights thereunder, and has none to convey.

The judgment of the district court is reversed, and the cause remanded with instructions to the district court to render a proper judgment in favor of the plaintiffs in this action and against the defendant, in compliance with the views we have expressed, for all that portion of the mineral lode in controversy westerly of the westerly end line of the Tip Top claim,

designated by the line A C on the diagram; and order the injunction against defendant, to this portion of the lode, to be made perpetual, and a judgment in favor of plaintiffs for their costs. A judgment should, also, be rendered in favor of defendant for all that portion of the lode easterly of the line A C.